## ANDREWS *et al. vs.* HALLIDAY *et al.*

1. Where the main object of the litigation is to ascertain and settle authoritatively the amount which each distributee has been advanced by the intestate, the verdict should find the several amounts specifically. The law, and not the jury, determines whether advancements shall be accounted for. In the present case the amounts are material, and should be set forth in the verdict no matter whether they are equal or unequal.

2. It is not sufficient to bar an accounting that the intestate believed he had advanced his distributees equally, if in fact he had not done so.

3. Where one of several distributees releases a co-distributee from accountability for advancements, whether with or without consideration, the release is operative as to all persons whose rights are not prejudiced by it; and it is also operative as against the releasor until she repudiates or disaffirms it. If, in a pending case, it is set up to her disadvantage, and she elects not to be bound by it, this election and the grounds on which she resists or attacks the release must be alleged in the pleadings.

4. When the defendants in a bill are entering on the final trial of their case under a decree requiring them to interplead, it is not competent for one of them to vary the pleadings by amendment so as to raise questions with the complainant in the bill touching the amount of the fund, waste, etc.

5. After a decree that the defendants interplead, the complainant in the bill, if he seeks no further relief, is not entitled to be heard in argument at all, much less to be heard in conclusion.

Equity. Interpleader. Verdict. Advancements. Contracts. Amendment. Practice in the Superior Court. Argument of counsel. Before Judge POTTLE. Wilkes Superior Court. May Term, 1879.

Wingfield, administrator of Nicholas Wylie, on the 2d October, 1874, filed his bill in Wilkes superior court against the heirs at law, to-wit: Susan E. Halliday, Martha Andrews, and the children of H. L. Wylie, praying for direction, relief, etc. The bill states that at that time he had distributed among the heirs at law a large amount, and was then ready to make another distribution, but was prevented by difficulties about advances; that N. Wylie, in his lifetime, had advanced about $7,000.00 to Mrs. Halliday, and that

she refused to account for such claimed advance unless the children of H. L. Wylie were compelled to account for advances made to that distributive share by N. Wylie, and that said children refused to account. To this bill the heirs at law filed answers as set out in the record. On May 4, 1876, the following order was taken: "That a proper case of interpleader having been presented by the administrator, Wingfield, complainant, it is ordered that the parties interested as defendants do interplead concerning the matters and things set up by defendants." Wingfield being removed from the administration, D. M. DuBose was appointed administrator *de bonis non*, and was made complainant in his stead.

From the pleadings as made up at the last trial, May term, 1879, it appears that Mrs. Halliday, while admitting her advancement, claimed that H. L. Wylie and his children had been advanced as much as herself, and that Martha Andrews likewise had been advanced a considerable amount, and that the said Martha on account of her release executed 7th December, 1872, which had been properly pleaded, was prevented from calling on Mrs. Halliday for an account of advances, and was bound to stand by an *equal division of the estate without reference to advances.*

This release was as follows:

"WASHINGTON, GA., December 7, 1872.

"Whereas it appears from a memorandum in writing that N. Wylie, deceased, had advanced Susan E. Halliday $6,880.00 in his lifetime; and whereas there is no charge amongst his papers against myself, I hereby release and quit-claim to my said sister all claims on my part for said advancement, and agree that the administrator proceed to divide the estate without reference to said advancements.

[Signed]                                  MATT. ANDREWS."

The children of H. L. Wylie, by proper answer filed, denied that they were liable to account for any advances made by N. Wylie to the share represented by them. Martha Andrews filed no defense or answer of any kind, and at

no time and in no way objected to standing by her release executed 7th December, 1872.

When the case was called for trial, counsel for Mrs. Halliday moved to amend her answer by setting up that at the time of the filing of this bill, there were left in the hands of Wingfield, the administrator, good cash assets to an amount over $10,000.00 more than sufficient to pay the claim against her for advances, if the same had been invested by the administrator. That each distributee had been paid more than the sum alleged to have been advanced to her. By way of cross-bill, she prayed that the distributees should come to an account for the amounts received by each; that the present administrator, DuBose, should also account with each of the distributees for the assets which had come into his hands; that a full investigation may be had, not only as to the advances made by N. Wylie in his life, but also as to the amounts paid to each by said Wingfield as the administrator, and that such a decree may be had as will settle all the rights of the parties thereto and terminate this litigation.

The amendment was allowed, subject to objection thereafter. Evidence was introduced under the amendment, the argument of counsel for Mrs. Halliday had closed, and the argument of counsel for complainant was progressing, when he demurred to the amendment as not being germain to the case made by the bill. The amendment was stricken, and so much of the case as related thereto was withdrawn from the jury. To this counsel for Mrs. Halliday excepted.

Her counsel also claimed the right to open and conclude the argument, as the trial was on the interpleading of defendants, in which the complainant was not interested. The court ruled to the contrary, awarding to complainant the opening and conclusion. To this her counsel also excepted.

Exceptions upon the above grounds were filed *pendente lite*, and come up, duly certified, as a part of the record.

The jury returned the following verdict: " We, the jury,

do find that none of the heirs of N. Wylie, deceased, shall be charged with any advances made to them before the death of said Wylie."

Counsel for Mrs. Andrews and Henry L.'s children moved in arrest of judgment—

1. Because there is no legal verdict of the jury upon which to base any legal judgment or decree.

2. Because said finding is no legal verdict upon the issues made by the pleadings and submitted to the court.

3. Because the finding is void for uncertainty.

This motion the court overruled.

They then moved for a new trial as follows:

1. Because the finding of the jury was illegal and void—was not a verdict—was contrary to law, evidence and the charge of the court.

2. Because the court refused to arrest the judgment as above stated.

3. Because the jury found contrary to the following charge: "You will consider the case of Mrs. Halliday; if you believe Mr. Wylie made the memorandum referred to in the bill, that valuation put upon the property is not conclusive—it is *prima facie*—and must be taken as the true value unless disproved by testimony. If you believe Mrs. Halliday was advanced to the amount named in the memorandum, you will next inquire if Henry Wylie, during his life, or his children after his death, were advanced anything, and if so, the value of said advancements.

"I give you the same instructions as to Mrs. Andrews: what, if any, advances did she or her husband receive, and their value." And because the court erred in giving this charge as to Mrs. Andrews.

4. Because the court erred in charging: "A portion given to the children of a deceased child is an advancement to this distributive share."

5. Because the court erred in charging: "I have charged you that when a portion is given by a father to a child, the

Andrews *et al. vs.* Halliday *et al.*

presumption is that an advancement was intended, subject to be rebutted by proof."

6. Because the court erred in charging: "If you believe from the evidence that this paper was made by Mrs. Andrews, after notice that her sister, Mrs. Halliday, would probably be called on to account for advancements by her father, and the purpose was to avoid a family dispute or contest, and the paper was delivered to Mrs. Halliday or her husband as her agent, then it was not void, and equity will enforce it."

7. Because the court erred in charging: "Whether such gifts (that is, the money, supplies and articles of use mentioned in the request of the opposite counsel given in charge) be an advancement, you can determine from parol testimony as well as written evidence, the law not requiring advancements to be shown by written evidence only."

8. Because the court erred in charging: "Advancements may be shown by parol testimony as well as by written memorandum."

9. Because the court erred in charging: "If you believe from the evidence that Mrs. Andrews executed the relinquishment before you to preserve the family peace and avoid probable law-suits and receive a speedy division of her father's estate, I charge you it is founded on what the law regards as a good and valid consideration for an executed agreement, and Mrs. Andrews is bound by such relinquishment."

10. Because the court erred in charging: "The legal effect of the relinquishment executed by Mrs. Andrews and delivered to Mrs. Halliday—if you believe the same to be proven—the said relinquishment to be acted upon by the administrator in dividing the estate for the benefit of Mrs. Halliday, and if based on a good consideration, that of blood, cannot be recalled so far as it operates upon the estate of Wylie in the hands of the administrator which Mrs. Andrews could legally control by gift. In other words, the paper amounts in law to an executed gift."

11. Because the court erred in charging: "If the evidence

shows that each of the heirs was advanced by Wylie the same amount, or that Wylie so thought at his death, and made a will disposing of his estate without any reference being made to such advances, then you would be authorized to find that complainants do not take any account of the advances. This is true, but you may look through the whole paper to ascertain *his* scheme and *intention as to who* should be the beneficiaries of his bounty, and how."

The motion was overruled, and they excepted.

The evidence is omitted as unnecessary to an understanding of the decision.

R. Toombs; John C. Reed; S. H. Hardeman, for plaintiffs in error, cited Code, §2582; 39 *Ga.*, 108; 59 *Ib.*, 206; 3d Metc. (Ky.), 270.

D. M. DuBose; D. A. Vason; W. M. & M. P. Reese, for defendants, cited, on validity of verdict, 9 *Ga.*, 543; 17 *Ib.*, 341; 40 *Ib.*, 249; 50 *Ib.*, 128; 51 *Ib.*, 144; 61 *Ib.*, 314. On presumption of advancement, 59 *Ga.*, 206; 25 *Ib.*, 352; 22 *Ib.*, 574; 16 *Ib.*, 16. On release by Mrs. Andrews, Code, §2741; 24 *Ga.*, 402; 36 *Ib.*, 184, 190, 191; 44 *Ib.*, 38, 43, 44. On charge in 4th ground, Code, §2581; 23 *Ga.*, 531; 51 *Ib.*, 20. On advancements being shown by parol, 51 *Ga.*, 20. On immateriality of errors in charge if verdict be right, 60 *Ga.*, 204; 61 *Ib.*, 62, 131, 168,

Bleckley, Justice.

1. In an equity cause, a motion in arrest of judgment is not, in name at least, precisely appropriate. Nevertheless, where there is a verdict, and its terms are such that no decree can properly be rendered upon it, something analagous to a motion in arrest may be used to set aside the verdict and clear it out of the way. It is of little or no consequence by what name the motion may be called. We think the finding of the jury in the present case was not such as the exigencies of the controversy required, and

that no legal decree whatever can be based upon it. The verdict does not declare that the distributees were not advanced or that they were advanced equally, or that one was advanced so much and another so much, but that none of the distributees shall be charged with any advancements made to them before the death of the intestate. The Code, in section 2582, speaks differently. It says: "In the distribution of an estate, every child of the intestate, and if a child be dead, the representative of that distributive share, must first account for any and all advancements made in intestate's life-time," etc. It is the province of the jury to ascertain, from all the evidence before them, what sums have been advanced, and to whom, and when this is done the law determines the rest. If this litigation were between Mrs. Andrews and Mrs. Halliday alone, and turned altogether on the release by the former to the latter, amounts might be immaterial, but the children of H. L. Wylie are the real contestants with Mrs. Halliday, and they are not parties to the release, and cannot be affected by it. In order to settle with them, it is absolutely necessary to know, not only how much the share of the estate which they represent has been advanced, but how much the other two shares have been advanced. The jury ought to have found the several amounts specifically. Failing to do so, the result is simply a mistrial, and another trial should be had for this reason were there no other.

2. But there was a regular motion for a new trial on various grounds. It was certainly an error to charge the jury that they would be authorized to find against taking any account of advancements, if the intestate thought at his death that the advancements were all equal, and made a will on that basis. As there was in fact an intestacy, the law, and not the intestate's belief or opinion, controls the question of accounting. If the advancements were really unequal, that the intestate was under a misapprehension as to their equality would make not the least difference. Why

should it? The scheme of the law is for each distributee to account for what he actually got by way of advancement, not for what the ancestor may have supposed he got. And this does not interfere with the right of the latter to put a valuation upon property where he has undertaken to do so. The two questions are altogether different.

3. There was a misapprehension on the part of the court as to the standing of the release by Mrs. Andrews to Mrs. Halliday, under the state of the pleadings. There was no attack upon the release on the part of Mrs. Andrews. She was not one of the interpleading parties, or rather she filed no answer and prayed for no relief. In order for her to avoid the release, she would have to repudiate or disaffirm it. Her election to do so, and the ground of her resistance to or attack upon the instrument would have to be alleged in the pleadings. But there is nothing of the sort in the record. For aught that appears she is content to abide by the document; and it is obvious that no one else is prejudiced by it, or has a right to insist upon its want of consideration. There was really no issue upon the release, and all the trouble that it occasioned upon the trial was unnecessary. If it was in the nature of a gift, there was no revocation of it, and it should have been treated as, for the time being, operative between the parties to it. Of course it would not and could not be in the way of an accounting by either of these ladies to the children of their deceased brother.

4. It seems to us that there was no error in finally disallowing the amendment to Mrs. Halliday's answer which she sought to make on the call of the cause for trial. There had been a decree to interplead, the pleadings had been made up, and the final trial was about to open. Wingfield, the administrator who filed the bill, was interested in the matter of the proposed amendment, and he was no longer a party before the court, having been succeeded in the administration by DuBose, and there was no proposition to make him a party, nor was there any motion to open or set

aside the decree of interpleader. The amendment as a whole was not germain to the business in hand, and if any part of it was suitable to be introduced at so late a stage, there was no suggestion to separate that part from the rest. In executing a decree for the defendants to interplead among themselves, it would be odd to treat the complainant as though he were a defendant, and to reach forth after an ex-complainant, no longer a party to the cause, and overhaul his accounts also. The case is enough mixed and confused without engrafting upon it such an anomaly as this.

5. The general rule is that the complainant in a bill of interpleader merely stirs up a war and then leaves the real belligerents to fight it out, he retiring from the scene to repose in dignified ease, holding, the while, the prize which is to reward the victor. We do not see that in this instance there was any occasion for the complainant to take part in the combat. So far from being entitled to conclude the argument, he had no right to be heard at all.

What we have ruled will be found, on examination, to grasp all the substance there is in the case. We have not cut it into as many pieces as does the motion for a new trial, and to do so we consider unnecessary.

Judgment affirmed.