37445. CASSEDY *et al. v.* BLAND, Administrator.

DECIDED JANUARY 19, 1959—REHEARING DENIED
FEBRUARY 2, 1959.

*Cohen Anderson,* for plaintiffs in error.

*Hugh R. Kimbrough,* contra.

CARLISLE, Judge. On October 8, 1904, Hiram Bland owned 286.18 acres of land in Candler County, Georgia. On that date, he conveyed to his oldest daughter, Zola Bland Cassedy, by warranty deed, 86½ acres of land, taking from her the following receipt: "Parish, Ga., Oct. 8th, 1904. Received of the estate of Hiram Bland eighty-six and one-half (86½) acres of land valued at one thousand dollars. Zola Cassedy. Witness by Geo. R. Trapnell, J. P." Hiram Bland acquired no more lands subsequent to that date, and on January 21, 1915, he gave to his oldest son, Ottis, by warranty deed, 81.3 acres of his land for the stated

consideration of $1,000, but which was later reduced by agreement in exchange of land to 70.3 acres, taking from him an identically worded receipt as the one taken from Zola. On October 15, 1921, he conveyed to his other daughter, Alva Pearl Lee by deed 32.75 acres of land for the stated consideration of $1,000. No receipt from Alva Pearl has been found.

Hiram's first wife died in February 1906, and in the same year he married Carrie Lord. As a result of that union, three sons, Gordon, Fred and H. C. were born. Hiram died in November, 1936. In 1955 the timber on the tract of land comprising Hiram's home place was sold for $9,000 and the proceeds divided equally between his widow and the three sons, Gordon, Fred and H. C. Bland. Carrie died in December, 1956. No administration was had on Hiram's estate until April 1, 1957, at which time Gordon Bland qualified as administrator. In his first annual return, filed on June 2, 1958, Gordon Bland listed net assets of the estate in the amount of $7,888.35, the chief source of which was the sale of the 82.38 acres of land to which Hiram Bland held title at the time of his death in 1936 and on which his widow, Carrie, lived up until her death in 1956. This acreage was all that Hiram Bland had remaining after the various conveyances to his three oldest children, and after the conveyance by him of a total of 14¼ acres at various times to a third party.

Cecil Cassedy and others, as the surviving heirs of Zola Bland Cassedy, claiming that the $9,000 received from the sale of timber in 1955, should be included as a part of the assets of Hiram's estate, cited the administrator to show cause why they should not be included in the distribution of the estate. The administrator answered stating that he could not recognize the heirs of Zola Bland Cassedy as being heirs at law of the estate of Hiram Bland and entitled to share in the distribution until such time as the receipt signed by Zola Bland Cassedy and quoted above should be construed by the court as to whether it constituted a mere $1,000 advancement to Zola or whether it constituted a receipt in full for her distributive share of Hiram's estate. The case was by order of the Ordinary of Candler County transferred to the superior court and was there tried by the judge sitting, with agreement of counsel, as the trior of the law and facts. The

parties submitted a stipulation of fact showing substantially, and so far as is material, the above stated facts. The trial judge heard evidence of witnesses, Gordon Bland, H. C. Bland, and Fred Bland, on behalf of the administrator, and at the conclusion thereof the judge stated that he thought that Zola had had her part of the estate and that he so ruled in this case and he thereafter entered an order and judgment to that effect.

The case is here on a direct bill of exceptions assigning error on this final ruling and judgment as contrary to law and without evidence to support it.

"Children shall stand in the first degree from the intestate and inherit equally all property of every description, accounting for advancements as hereinafter provided." Code § 113-903 (4). "An advancement is any provision made by a parent out of his estate, for and accepted by a child, either in money or property, during his lifetime, over and above the obligation of the parent for maintenance and education. Donations from affection, and not made with a view to an accounting, nor intended as advancements, shall not be accounted for as such; nor shall the support of a child under the parental roof, although past majority, nor the expenses of education, be held as advancements, unless charged as such by the parent." Code § 113-1013. "In the distribution of an estate, every child of the intestate, and if a child is dead the representatives of his distributive share, shall first account for any and all advancements made in the intestate's lifetime. If the advancements to any distributee equal or exceed his distributive share, he shall receive nothing further from the estate; but if the advancements amount to less than his share, each distributee who has received no advancements, and each one who has received less, shall first be made equal to the one receiving the greatest advancement, before a general and equal distribution is made." Code § 113-1016. From the foregoing Code sections, it may be seen that the scheme of the law in cases of intestacy favors equal distribution of the intestate's property among his heirs. *Andrews* v. *Halliday*, 63 *Ga.* 263, 269.

There are only two ways by which this scheme of equality among the heirs may be upset. The first, of course, is by the making of a will on the part of the ancestor providing for a

distribution of his estate in a manner other than that set forth by law (*Andrews* v. *Halliday*, supra) ; and, the second is by a valid and binding contract executed between the ancestor and the heir, which clearly shows a meeting of the minds between them acknowledging on the part of the heir receipt in full for the heir's prospective share of the ancestor's estate. Such a contract when entered into is binding and enforceable. *Barham* v. *McKneely*, 89 *Ga.* 812 (15 S. E. 761). It matters not what the ancestor thought as to whether the scheme constituted a mere advancement or a settlement of the heir's claim against his estate if the heir did not agree with the ancestor as to the effect of the advancement. *Andrews* v. *Halliday*, supra. The general rule elsewhere seems to be in accord. See 26A C.J.S. 655, Descent and Distribution, § 62; and, 792, Descent and Distribution, § 104. It follows that the receipt here in question, admittedly being ambiguous as to the intent of Zola Cassedy with respect to its effect, and there being no evidence that there was an agreement between her and her father that the land deeded to her should constitute her full share in the estate, the evidence did not authorize the finding of the trial judge, unless it can be said that the advancement which she received was equal to or greater than her distributive share of the estate. Code § 113-1013.

However, "Every advancement, unless a value is agreed on at the time of its acceptance, shall be estimated at its value at the time of the advancement, and no interest shall be charged upon the value thereof until the time of the first distribution of the estate, from which date advancements shall be reckoned, with regard to interest, in the same manner as an equal amount of the estate received at that time." Code § 113-1017. The evidence in this case shows that the intestate made an advancement to Zola in 1904 and fixed its value at $1,000. Subsequently, he made advancements to the other two children by his first wife and fixed the same value on their shares. The evidence and the stipulation of facts in the record show that in addition thereto the estate consisted of $7,888.35 net, derived from the sale of the tract of land held by the intestate at the time of his death, and $9,000 derived from the sale of timber which, when taken with

the $3,000 in advancements, left an estate of at least $19,888.35. Assuming, but not deciding, that the estate was to be distributed in not more than seven shares, each share would be equal roughly to $2,800. Since the evidence shows that the plaintiffs' mother received only $1,000, the scheme of the law has not been satisfied, and therefore, the evidence did not authorize the finding and the judgment of the trial court.

*Judgment reversed. Gardner, P. J., and Townsend, J., concur.*