THE DWELLE-KAISER COMPANY, Plaintiff, *v.* C. B. FRID, Doing Business under the Name and Style of FRID-MCLEOD CONSTRUCTION COMPANY and Others, Defendants.

Supreme Court, Erie County, January 30, 1931.

*William C. Carroll*, for the plaintiff.

*Saperston, McNaughton & Saperston*, for the Cary Company.

*Kenneth W. Glines*, for the National Bank of Fredonia.

*Robert J. Moore*, for Wicker Lumber Company.

*Hamilton Ward* [*Frank A. Gugino* of counsel], for the State of New York.

*Edwin J. Culligan*, for George E. Hudson, Inc.

*Thomas D. Powell*, for the defendant Louis J. Mertes.

*Henry Altman*, for the defendant Buffalo Floor Covering Co., Inc.

*Joseph F. Rice*, for the defendants Jamestown Stone and Marble Company and Frank A. Humbert, Inc.

*Harold Tillou*, for the defendant Leroy M. Dibble.

*Robert J. Summers*, for the defendant Contractors Ornamental Steel Co., Inc.

*Daniel P. Scannel*, for the defendant Ernest Kipling.

*William J. Magavern*, for the defendant H. D. Taylor Company.

*Lathrop & Whiting*, for the defendant Buffalo Gravel Corporation.

*Burke & Desmond*, for John Swenson Granite Company.

*Carlton P. O'Connor*, for the defendant Thomas Daniels.

CHARLES B. WHEELER, Official Referee. This action is brought to establish and foreclose mechanics' liens on a fund owing by the State growing out of the construction of a building known as the Nurses Home erected in connection with the Buffalo State Hospital

for the Insane at Buffalo, N. Y. Many of the alleged liens are contested on various grounds, which the referee will consider in the opinion or memorandum which follows.

*As to the claim of National Bank of Fredonia.* The National Bank of Fredonia asserts claims against the fund amounting to $27,926.19 for moneys advanced to the Frid-McLeod Construction Company, the general contractor, for which it holds assignments executed to the bank by the contractor. The assignments were only filed by the bank in the office of the Comptroller of the State of New York, but not with the Department of Public Works, having charge of the construction of the work done. Section 16 of the Lien Law (as amd. by Laws of 1929, chap. 515; since amd. by Laws of 1930, chap. 859) provides that no assignment for work or material furnished shall be valid " unless such assignment or order, or a copy thereof, be filed within ten days after the date of such assignment of contract, or such assignment of money, or such order, with the head of the department or bureau having charge of such construction, and with the financial officer of the municipal corporation or other officer or person charged with the custody and disbursement of the corporate funds applicable to the contract for such public improvement  *  *  *.''

The bank's failure to file with the Department of Public Works its assignments, therefore, renders its assignments invalid as against valid lienors. However, the decisions hold such assignments to be valid as between the contractor and the bank, and take precedence over invalid liens. (*Italian Mosaic Co.* v. *City of Niagara Falls,* 131 Misc. 281, citing *Albany B. S. Co.* v. *Eastern B. & S. Co.,* 235 N. Y. 432; *Edison El. Illuminating Co.* v. *Frick Co.,* 221 id. 1.)

When valid liens against the fund have been paid the bank is entitled to the payment of any balance of such fund remaining as a part payment of the amount owing it by virtue of such assignments.

The referee is, therefore, called on to determine what other liens filed are valid and existing liens.

*As to the claim of the Jamestown Stone and Marble Corporation,* which asserts a lien against the fund for $4,200, with interest from March 18, 1930.

The facts are that on October 9, 1928, the Department of Mental Hygiene, acting for and on behalf of the State of New York, entered into a contract with Frid-McLecd Construction Company, for the erection of a building known as the Nurses Home on the property known as the Buffalo State Hospital at Buffalo, N. Y., and that the claim of the Jamestown Stone and Marble Company arose out of the furnishing to the Frid-McLeod Construction Company cer-

tain work and material which went into the construction of said Nurses Home.

The stone and marble company filed a notice of lien for such work and material.

This notice of lien was filed with the State Comptroller and with the Department of Mental Hygiene, but not with the Department of Public Works.

Objection is raised to the validity of this lien on the ground that the notice of lien should have been filed with the Department of Public Works, which had charge of the construction of said Nurses Home, and that the filing of such notice with the Department of Mental Hygiene was the improper place of such filing, and the lien therefore, became ineffective and worthless.

Section 12 of the Lien Law (as amd. by Laws of 1916, chap. 507) requires that notices of lien shall be filed with the "*head of the department or bureau having charge of such construction*" and with the Comptroller of the State, or other financial officer.

The question is, therefore, presented, which department had charge of the "*construction*" of the Nurses Home in question. Section 48 of the Mental Hygiene Law (as amd. by Laws of 1927, chap. 426) provides: "All plans and specifications for the erection, alteration, repairs and improvements hereafter of buildings for state institutions in the department of mental hygiene shall be prepared by the department of public works, but the supervising engineer of the department of mental hygiene, may when directed by the commissioner, prepare plans and specifications for the installation, alteration, repairs and improvements of the mechanical appliances and fixtures in the existing state institutions in the department which before adoption shall be approved by the department of public works. The commissioner of mental hygiene shall adopt or reject any such plans or specifications and no such work shall be begun until the plans and specifications therefor have been adopted, but before the adoption thereof the commissioner shall submit the same to the board of visitors of such institution, and shall allow such board a period of not more than thirty days in which to submit a statement of their opinions and suggestions in regard thereto. Contracts for such erection, alteration, repairs and improvements may be let by the commissioner, subject to the approval of the comptroller, for the whole or any part of the work to be performed, and in the discretion of the commissioner such contracts may be sublet. * * * Except as above specified all such work shall be done by contract or special order. The form of the contract or special order shall be prescribed by the department of public works. All payments on contracts or special orders

shall be made on the certificate of the department of public works approved by the commissioner as the work progresses or the purchase of material is made and upon bills duly certified."

It is provided by section 222 of the State Departments Law: " There are hereby assigned to the department of public works all the functions of the state department of public works as now existing and of the superintendent of public works, of the state engineer and surveyor, of the department of architecture and of the state architect, of the bureau and commission of housing and regional planning * * * and all their powers and duties, as now prescribed by law, * * * are hereby transferred to the department of public works and hereafter shall be exercised and performed therein by or through the appropriate officer, division or bureau thereof as prescribed by or pursuant to law." (See, also, section 9 of the Public Works Law, which provides: " The department of public works, by or through the appropriate officer, division or bureau, thereof shall continue to exercise and perform all the functions, powers and duties vested by law in such department or superintendent immediately prior to the taking effect of this section as hereby amended * * *.") (This section was formerly section 11, renumbered and amended by Laws of 1927, chapter 512; further amended by Laws of 1928, chapter 436.)

Section 15 of the Public Works Law (added by Laws of 1927, chap. 512, as amd. by Laws of 1928, chap. 757) provides: " The head of the division of architecture shall be an officer to be known as the commissioner of architecture, who shall be appointed by the superintendent of public works. Such division shall perform such architectural services in connection with the preparation of plans, specifications and designs for public buildings and in connection with the construction thereof as the superintendent of public buildings may direct."

By section 8 of the Public Buildings Law (as amd. by Laws of 1928, chap. 757) it is provided: " The department of public works shall have the custody of all plans, specifications, apparatus, books and records in such department which pertain to architecture. Whenever plans and specifications for state buildings are executed by architects not connected with the division of architecture in the department of public works, they must be approved by the superintendent of public works. The superintendent of public works shall prepare the drawings and specifications for and supervise the construction of all new buildings erected at the expense of the state, except as otherwise provided by law; shall also prepare the drawings and specifications for all additions to existing buildings, and for the alteration and improvement thereof, except when such work is

done by an institution or inmate labor or both upon special fund estimates, and shall see that the materials furnished and the work performed in constructing, altering or improving any such building are in accordance with such drawings and specifications, and that the interests of the state are fully protected.  *  *  *  The superintendent of public works, shall prepare necessary forms of contracts, to be approved by the attorney-general, which shall be used in all work let by contract and no payment shall be made on any such contract except upon official certificate of such superintendent after audit by the comptroller."

By section 14 of the Public Buildings Law (as amd. by Laws of 1928, chap. 757) it is provided: " It shall be the duty of the superintendent of public works in accordance with the provisions of this chapter, to cause to be prepared specifications and drawings for all work and material to be contracted for upon and in connection with the erection of new buildings for the state and of additions, alterations and improvements thereto, and such specifications and drawings shall be a part of each such contract.  Such specifications and drawings when prepared shall be filed in the office of the department of public works, and in the office of the board, department, commission or officer having jurisdiction over such work, and in the office of the state comptroller;  *  *  *.  The contract when awarded shall be executed in quintuplicate.  One quintuplicate original thereof shall be forthwith filed in the office of the department of public works, one, together with the bond accompanying such contract, in the office of the state comptroller; one furnished to the contractor and one filed in the office of the board, department, commission or officer having jurisdiction over the work."

Section 48 of the Mental Hygiene Law (as amd. by Laws of 1927, chap. 426), however, applies only to " *plans and specifications* *  *  *  *of the mechanical appliances and fixtures in the existing state institutions in the department*," and does not relate to plans and specifications for the erection and construction of new buildings and, therefore, has no application to the Nurses Home now under consideration.

A study, however, of the sections above quoted make it quite plain that although the contract for the erection of the Nurses Home was executed on behalf of the State by the officials of the Department of Mental Hygiene, the supervision of the execution of said contract devolved upon the Department of Public Works.

As a matter of fact this department did assume that duty and responsibility, and appointed its own inspectors to supervise the work as it progressed.

The referee, therefore, reaches the conclusion that the Department of Public Works was the department with which notices of liens should have been filed, and that filing with the Department of Mental Hygiene was a failure to comply with section 12 of the Lien Law and, therefore, the asserted lien of the Jamestown Stone and Marble Corporation is defective and no valid lien has been established. It should be noted that the State Engineer and his bureau under the provisions of section 222 of the State Department Law is now made a part of the Department of Public Works.

*As to the claim of Frank A. Humbert, Inc., for $260.04.* The facts as to the filing of the notices of lien in this case are identical with those stated in that of the Jamestown Stone and Marble Corporation and for the same reasons the referee holds the lien invalid.

*As to the lien filed by the H. D. Taylor Company for $2,973.86.* Objections are raised to the validity of this lien on the ground that the notice does not state when the amount claimed in the lien was due or to become due.

Attached to the notice of lien and forming a part thereof is a copy of the contract between the H. D. Taylor Company and the general contractor.

This contract states when payments were to be made and the notice states the amount due the lienor the sum of $973.86.

The same question was raised in the case of *Bluff Point Stone Co. v. U. S. Fidelity Co.* (180 App. Div. 832), where as in this notice a copy of the contract was attached to and formed a part of the notice; and it was held that it met all the requirements of the statute and the lien was valid.

The referee holds the notice of lien filed by the H. D. Taylor Company good and the lien valid.

*As to the lien filed by Thomas Daniels for $650.* The validity of this lien is challenged. The lien does not appear to have been properly verified. There is a verification attached to the notice, but the affidavit of verification appears to have been left unsigned by the lienor, although the verification states it was sworn to before a commissioner of deeds. In order to constitute a proper verification the affidavit should have been actually signed by the party making it which was not done.

In the case of *Kingston v. M. S. Construction Corporation* (249 N. Y. 533) exactly the same facts appeared, and the court held the notice of lien was not verified in accordance with the statute.

The referee is, therefore, forced to hold the lien invalid.

*As to the lien of George E. Hudson, Inc., for $2,722.57.* The

validity of this lien is attacked on the ground that the notice of lien does not state the date when the amount alleged to become due in the future actually became due.

The notice does state that the general contractor owes said sum of $2,722.57 for work and material furnished, of which sum $1,417.57 became due March 1, 1930, and $1,305 is to become due within thirty days after the completion of the work by the general contractor.

It would appear that as to the $1,305 the actual calendar date is uncertain and the best the lienor could do was to state the terms of the contract of the lienor with the general contractor. The referee holds this to be a sufficient statement, particularly under the provision of section 23 of the Lien Law requiring a liberal construction of its provisions in the interest of justice. (*New Jersey Terra Cotta Co.* v. *City of New York*, 112 Misc. 510, 512.)

The further objection is urged that the answer of this lienor was not served until October 28, 1930. The plaintiff's attorneys do not appear to have raised any objection to the receipt of the answer and we think no penalty attaches to such service even though somewhat late.

*As to the claim of Kipling Paper and Paint Company filed for $2,235.* Lien allowed.

All other liens are in the opinion of the referee established.

Findings may be prepared accordingly.