The Dwelle-Kaiser Company, Plaintiff, *v.* LeVell Moon and Others, Defendants.

Supreme Court, Erie County, June 15, 1931.

*Lewis & Carroll,* for the plaintiff.

*Thomas G. Fitzgerald,* trial attorney.

*Judson, Holley & Andrews,* for Crose & Leary and Austin Clay Products Company, Armstrong Cork and Insulation Company, Hercules Cement Corporation and Rogers Structural Steel Company.

*Stockwell, Campbell & Warren,* for the Lockport Exchange Trust Company.

*Stanley H. Montfort,* for the Columbia Casualty Company.

*Edwin J. Culligan,* for George E. Hudson, Inc.

*Henry Altman,* for the Buffalo Floor Company, Inc., and Joseph T. Ryerson & Sons, Inc.

*Chester Smith & Smith*, for the Feine & Sons Co.

*William J. Magavern*, for the H. D. Taylor Company.

*McFarlane & Harris*, for Earl H. Merkel.

*William D. Lynn*, for the Valley Sand and Gravel Corporation.

*Frederick J. Mix*, for Gershner & Statt, Inc.

*Harry L. Gilrie*, for James L. Quackenbush, Jr., as trustee in bankruptcy.

*Moore, William & Knowles*, for the Wicker Lumber Company.

*Roy H. Ernst*, for Louis Frazer.

CHARLES B. WHEELER, Official Referee. This action is brought to foreclose and establish liens on a fund growing out of a contract made by the defendant LeVell Moon with the State of New York for the construction of a female infirmary at Sonyea, N. Y., entered into on the 12th of September, 1928.

The defendant Columbia Casualty Company executed and delivered to the State its bond for the faithful performance of the contract. Moon entered on the performance of his contract, but in May, 1930, defaulted as to full performance. The casualty company was called on to complete and did so.

On April 18, 1930, a petition in bankruptcy was filed against Moon and on May 23, 1930, he was adjudicated bankrupt in the Federal court, and a trustee appointed who is made party defendant in this action.

Various liens against the fund in the State's possession were from time to time filed, and also assignments to different parties. The validity of various of these liens and assignments are attacked and will be considered by the referee in their order. The sum available for distribution is $28,974.22.

Counsel for the Columbia Casualty Company and for Sidney H. Gurnee contends that inasmuch as John Moon & Son, the general contractor, made default in fully completing its contract with the State, and the casualty company under the terms of its bond conditioned for the fulfilment of said contract was called on and did complete said contract, the entire fund in the hands of the State belongs to the surety company, and the various parties filing notices of liens acquired no valid liens thereon.

It is contended that the State canceled the contract with John Moon & Son and the casualty company completed the contract, and is entitled to be paid the cost of such completion. It may be that to that extent, if necessary, the casualty company would have the right to look to the earned fund in the hands of the State for

the payment of such cost, but to that extent only. It certainly had no right to claim ownership to the fund beyond what was necessary to indemnify itself for the cost of completion. It is argued that when the State canceled its contract with John Moon & Son for default the right of Moon & Son against the State and any right to recover for work actually done was gone, and subcontractors and materialmen would acquire by notices of liens no right to the unpaid fund held by the State. In other words, they acquired no greater rights than Moon & Son had. We think the answer to the proposition advanced is that it rests entirely with the State, and not with the casualty company, to raise such a defense. The State has raised no such defense on its behalf. It concedes it holds so much money on the completion of the work subject to distribution to those entitled to it, and leaves it to the court to determine among the various parties to whom it shall go. This is justice and equity, and any other holding would be unconscionable.

### As to the Claim of the Lockport Exchange Trust Company.

After Moon had made his contract with the State and on the 3d day of June, 1929, the trust company loaned the contractor $20,000, taking a promissory note therefor indorsed by Moon's mother. As further security the trust company was given a mortgage covering real property in the city of Lockport, and also certain other real property at Olcott Beach. Moon also transferred to the trust company two policies of life insurance. The trust company still holds the securities as collateral to Moon's indebtedness to it.

The $20,000 note has never been paid, but was renewed from time to time and resulted in a promissory note for $20,000 dated March 6, 1930, being the final note of said renewals.

On April 15, 1930, Moon, the contractor, executed an assignment to the trust company of " All moneys due and to become due * * * on monthly and final estimates for labor and material performed and furnished in connection " with the contract for the erection of the female infirmary at Sonyea.

This assignment was mailed to Albany in connection with another assignment to the Columbia Casualty Company executed the same day and was filed in the proper State departments on the 18th day of April, 1930, but not until the assignment to the casualty company had first been filed.

On the very day the assignment to the trust company went on record, a petition to have Moon declared bankrupt was filed in the United States District Court, and on May 23, 1930, Moon was adjudicated a bankrupt, and a trustee in bankruptcy was named.

The trustee is made a party defendant in this action and has interposed an answer alleging the said assignment to the trust company to be illegal and void on the ground it was given for the purpose and with the intent of giving the trust company an illegal preference in violation of the provisions of the Federal Bankruptcy Act, and that the trust company had reasonable cause to believe a preference would result.

The same defense is interposed by other lienor defendants.

If the claim of the trust company under the assignment is valid, then the liens of all lienors whose liens were filed after the filing of the assignment will be worthless for such assignment will more than exhaust the fund subject to distribution.

The question, therefore, presented for the decision of the referee is whether the evidence is sufficient to warrant a finding that the assignment in fact violated the provisions of section 60 of the Bankruptcy Act or section 67 thereof (U. S. Code, tit. 11, §§ 96, 107). Section 60, paragraph a, declares what constitutes a preference and paragraph b declares such a preference shall be voidable by the trustee in bankruptcy if the person receiving it " shall then have reasonable cause to believe that the enforcement of such judgment or transfer would effect a preference."

It should be here noted that the trust company parted with no present consideration for the making of the assignment in question. It was given solely to secure a past and owing indebtedness.

A claim is made that this assignment was given in fulfillment of a promise made by Moon, the debtor, some two months prior to its execution that he would give such an assignment if desired, but there is no evidence that the trust company in fact requested the execution of the assignment. On the other hand, Moon testified that the trust company knew nothing of the giving of the assignment at the time it was made; that it was executed and sent to Albany for filing and record without its knowledge, and never personally delivered to the trust company; but that Moon on the day following its execution told the officers of the trust company what he had done. Assuming there had been an agreement between Moon and the trust company that such an assignment would be made, nevertheless the provisions of the Bankruptcy Act against preferences cannot be defeated by the perfection of such an agreement within the four months' period, and such a transaction will be subject to the same rules as though no such agreement had been made. (2 Collier Bankr. [13th ed.] 1252.)

The facts are that Moon at the time was hopelessly insolvent, and that the assignment was made for the purpose of protecting the trust company and Moon's mother who had given the trust

company her indorsement on the notes given the company, and also given it a mortgage on real property owned by her, which the trust company still holds. Moon testified the assignment was given to protect his mother. It so operated, for if the trust company can secure the payment of Moon's indebtedness out of moneys owing by the State it then relieves the security given by the mother and held by the trust company.

The only question of fact remaining is whether the trust company had " reasonable cause to believe that the enforcement of such * * * transfer would effect a preference " within the meaning of section 60 of the Bankruptcy Act.

No officer or agent of the trust company was called to testify that it had no cause to believe the assignment would effect an illegal preference, but doubtless the burden rested on the trustee in bankruptcy to satisfy the court the trust company had reasonable cause to so believe.

The whole transaction was an unusual one, out of the ordinary course of business dealings. According to Mr. Moon's testimony, the assignment was given without conference with the trust company. At the time liens for upwards of $19,000 had been filed, showing the contractor was unable to meet his obligations to subcontractors and materialmen. It would be strange if knowledge of such a condition of the contractor's affairs had not reached the trust company. In this connection it appears the original $20,000 note given the trust company was renewed monthly. The last renewal was dated March 6, 1930. This note, however, was not renewed and was past due at the time on April fifteenth the assignment to the trust company was executed. Reading between the lines, the inference may be drawn that the trust company did not seek or accept a renewal, for the reason that Moon's financial condition at the time was such that the trust company thought a renewal of the note inadvisable. It is at least a circumstance tending to show that the trust company was not ignorant of Moon's financial condition.

Moon does not in his evidence state what he informed the trust company after making the assignment beyond the fact he told them he had made it. All the peculiar circumstances of the case would seem to have put the trust company upon inquiry. The rule governing such cases is stated by Collier on Bankruptcy, pages 1299, 1300, 1301, 1302. "Actual knowledge not required.— ' Reasonable cause to believe ' that a transfer will effect a preference does not require proof either of actual knowledge or actual belief, but only such surrounding circumstances as would lead an ordinarily prudent business man to conclude that the transfer

will result in a preference. Notice of facts which would incite a person of reasonable prudence to an inquiry under similar circumstances is notice of all the facts which a reasonably diligent inquiry would develop. If a creditor accepts a transfer under circumstances which would lead a man of ordinary prudence and sagacity to believe that he was being preferred by the debtor, over other creditors of the same class, without making investigation, he will be charged with all the knowledge which he would have acquired had he performed his duty in this regard." (See cases cited by author.)

The referee, therefore, finds the trust company was at least put on inquiry, and had such been made it must have learned that the assignment given it was made for and would effect an illegal preference over other creditors of the bankrupt, and was, therefore, void. Assuming, however, the assignment valid, there is a rule of equity which requires the trust company to enforce the securities it holds as collateral for the payment of Moon's indebtedness before resorting to the fund in the State's hands to the prejudice of subsequent liens filed by subcontractors and materialmen. As already stated, at the time of the original borrowing by Moon from the trust company of $20,000, his note was indorsed by his mother. The renewal notes were so indorsed. The trust company was also given to secure these notes a mortgage on two parcels of real property, one located in the city of Lockport, the other at Olcott Beach. Two policies of life insurance were also assigned to it. These securities it still holds. The trust company thus holds two classes of securities, *first*, those mentioned above, and *second*, the lien or assignment to it of the fund held by the State. On the other hand, the subcontractors and materialmen filing liens only have liens on the fund itself.

The rule of equity referred to is that where a creditor has a lien upon two funds for the security of his debt, and another party has an interest in one only of the funds, without any right to resort to the other, equity will compel the creditor to satisfy his debt, if possible out of the fund in which he alone has an interest. (*Ingalls* v. *Morgan*, 10 N. Y. 178.) The same rule is laid down in 26 Cyc. 928-1. It is applied in *Breed* v. *Auburn National Bank* (57 App. Div. 468, 476). Cited in *Barnes* v. *Mott* (64 N. Y. 397, 402) and *Campbell* v. *Vedder* (3 Keyes, 174, 180). (See, also, *Besley* v. *Lawrence*, 11 Paige, 581.)

If the referee is in error in holding the assignment void on the ground it created an illegal preference, still the trust company should enforce the other securities it holds before resorting to the fund in the State's hands.

As to the Claim of the Columbia Casualty Company and That of the Wicker Lumber Company.

These two claims grow out of facts and transactions so related that it becomes necessary for the referee to consider them together. . On October 20, 1928, Moon, the general contractor, entered into a contract with the Wicker Lumber Company to furnish trim, doors, window frames, sash and other mill work to be used in the construction of the building to be erected at Sonyea. All this material was in fact delivered to Moon, the last item being delivered on January 29, 1930.

On June 24, 1929, the Wicker Lumber Company filed notice of lien for the proper State offices or departments.

Following the filing of this notice of lien, and on or about July 11, 1929, Moon, the contractor, was granted an order of this court permitting him to substitute a bond or undertaking to discharge the lien filed. The Columbia Casualty Company furnished such bond, and by order of the court dated July 12, 1929, the lien was discharged. By the bond so furnished the Columbia Casualty Company undertook to pay the Wicker Lumber Company the said sum of $4,325, with interest, the amount of said lien, in the event any judgment or judgments were recovered by the lumber company in an action to enforce or foreclose such lien.

The casualty company has not paid the amount of said lien to the Wicker Lumber Company, and pursuant to the provisions of section 21 of the Lien Law (as amd. by Laws of 1916, chap. 507; since amd. by Laws of 1929, chap. 515, and Laws of 1930, chap. 859) the Wicker Lumber Company seeks to recover of and from the casualty company the amount of said lien secured by said bond.

On April 15, 1930, Moon, the contractor, visited the city of Buffalo and saw the general agent of the casualty company and at that time executed to the casualty company an assignment to the amount of $5,166.03 of the moneys due and to become due under his said contract with the State. This $5,166.03 was reached by taking the amount of the Wicker Lumber Company lien for $4,325, and by adding thereto certain amounts owing by Moon to the casualty company for insurance premiums. This assignment was duly filed at Albany in the proper State departments, and such filing preceded the filing of the assignment made the same day to the Lockport Exchange Trust Company. The trustee in bankruptcy thereafter appointed by his answer in this action alleges said assignment so given the casualty company is illegal and void because given for and creating an unlawful preference under the Federal Bankruptcy Act.

What the referee has said touching the law in the discussion of

the claim of the Lockport Exchange Trust Company applies equally to the claim of the Columbia Casualty Company. As matter of fact the referee has little doubt that that company had cause to believe that the giving of the assignment to it would effect a preference. The company knew Moon had not paid the lien of the Wicker Lumber Company and other liens were being filed. Mr. John W. Cryer, who acted as general agent at the time for the Columbia Casualty Company and drew the assignment to it, was a witness called on this hearing and was asked as to his knowledge of the financial condition of Moon, and said: " I thought he was getting into trouble the way the liens were being filed." He certainly had cause to believe the assignment would effect a preference to his company and regretted he had not acted when the surety bond was given.

The referee can reach no other conclusion than that the assignment to the casualty company is void as violating the law against illegal preferences.

The Wicker Lumber Company in this action seeks to recover on the bond given to discharge its lien, which was conditioned to pay the amount of any judgment establishing the Wicker Lumber Company's lien.

The defense is alleged that the Wicker Lumber Company never had any valid lien. If this is true then the casualty company is not liable on its bond.

The provisions of the Lien Law in such matters are discussed in the cases of *Morton* v. *Tucker* (145 N. Y. 244) and *Harley* v. *Plant* (210 id. 405).

The giving of the undertaking takes the place of the property and becomes the subject of the lien and the remedy is one in equity in which the sureties are made parties.

The question is, was the lien filed good? It is contended the notice of lien was defective; that at the time of filing material actually furnished at the time amounted to only $1,120, and the lumber company did not deliver the balance until a later day, and that the lumber company was only entitled to a lien to the extent of the material actually delivered and accepted by the contractor on the job at the time of the filing of the lien.

The referee had this very question up for consideration and decision in the case of *Genesee Lumber & Coal Co.* v. *Bonarigo* (139 Misc. 707), and there held that a lien might be filed for the contract price before the work is completed. The provisions of the statute were discussed and the referee cited to sustain his views the case of *Heinlein* v. *Murphy* (3 Misc. 47), where the court said: " We think a contractor can file a valid mechanic's lien for the

whole contract before all the work is done, or all the materials furnished, provided the balance of the contract is thereafter fully completed according to the terms thereof."

He also cited *Chambers* v. *Vassar's Sons & Co.* (81 Misc. 562) and the case of *Barrett* v. *Schaefer, Jr., & Co.* (162 App. Div. 52, 57), where the court said: "A state of facts may exist where, during the progress of the work, and before the entire work is done or all the materials furnished, one entitled to a lien may file his notice for the whole contract price and assert a lien therefor, provided the balance of the contract is thereafter fully completed according to its terms."

The referee refers counsel to his opinion for a fuller statement of the reasons moving him in reaching the result stated.

The referee now holds the notice of lien filed by the Wicker Lumber Company was good, and the Columbia Casualty Company liable on the bond given, and the Wicker Lumber Company entitled to a judgment against the casualty company for the amount thereof.

### As to Liens.

In connection with the valid liens filed by subcontractors and materialmen against the fund it should be here noted that such liens are not subject to the objection of giving an illegal preference to the lienors. Such liens are not affected by the bankruptcy of the contractor. (2 Collier Bankr. [13th ed.] 1542, also 1478.)

They are given by statute and stand on a different basis than the voluntary act of the bankrupt.

### As to the Claim of the Jamestown Metal Desk Company, Inc.

This company asserts a lien on the fund for the sum of $818. The claim is challenged on the ground that the notice of lien was not filed with the proper department. The answer of the claimant alleges such notice of lien was filed on May 3, 1930, with the Department of Mental Hygiene of the State of New York and with the State Comptroller, but there is no allegation of a filing with the Department of Public Works, and none was in fact filed with that department. The referee is of the opinion that such failure to file with the Department of Public Works is fatal to the alleged lien. In a very recent case tried before this referee the identical question was before him for decision and he there held the Department of Public Works of the State was the department charged with the supervision and carrying out of the contract though made with the Department of Mental Hygiene, and the law, therefore, required the notice of lien be filed with the Department of Public Works and a failure to so file defeated the attempted lien. (*Dwelle-Kaiser Co.* v. *Frid*, 139 Misc. 83.)

Without here repeating what the referee said in his opinion in the *Frid* case we refer counsel to the published opinion as expressing the opinion entertained as to the insufficiency of the notices filed by the present claimant.

Claim as a lien is, therefore, rejected, but the claimant is entitled to a personal judgment against the contractor.

As to Claim of Cepriano Sand and Gravel Company, Filed for $67.50.

No proof of this lien was made at the trial and the same is, therefore, dismissed for failure of proof.

As to Claim of George E. Hudson, Inc.

This claim for a balance of $1,453.83 due is allowed.

As to Claim of Earle H. Merkel for $2,700.

The full amount of this claim is allowed.

As to Claim of Plaintiff, the Dwelle-Kaiser Company for $770.

The full amount of this claim is allowed.

As to Claim of Crose & Leary for $2,538.26.

The full amount of this lien is allowed.

As to Claim of Valley Sand and Gravel Corporation for $514.58.

The full amount of this lien is allowed.

As to the Claim of Gerstner & Statt, Inc., for $3,172 50.

The amount of this lien is reduced by the sum of $398.88 for cement and lime furnished said lienors by LeVell Moon, leaving a balance due of $2,773.62, which sum is allowed.

As to Lien of Austin Clay Products Company for $1,661.05.

This claim is allowed for full amount.

As to Lien of Jos. F. Ryerson & Sons, Inc., for $711.80.

This claim is allowed for full amount.

As to Lien of August Feine & Sons Company, Filed for $352.

This claim is allowed for full amount.

As to Lien of Louis W. Frazer, Filed for $603.

This claim is allowed as a lien for labor and is, therefore, prefer ed as a first lien.

As to Lien of H. D. Taylor Company, Filed for $2,205.08.

This claim is allowed for full amount.

As to Lien of Armstrong Cork and Insulation Company, Filed for $310.

This claim is allowed for full amount.

As to Lien of Hercules Cement Corporation, Filed for $819.50.

This claim should be reduced by $84.80, leaving due the sum of $735.10, which is allowed.

As to Lien of Rogers Structural Steel Company, Filed for $1,669.78.

This claim is allowed for full amount.

As to Lien of Wright & Kremers for $2,592.92, Assigned to Sidney Gurnee.

This represents amount paid for the completion of the contract after Moon failed to complete. It is allowed in full.

As to Lien of Buffalo Floor Covering Co., Inc., Filed for $2,540.

This lien is allowed in full.

### Summary.

| | |
|---|---:|
| George E. Hudson, Inc. | $1,453 83 |
| Earle H. Merkel | 2,700 00 |
| Dwelle-Kaiser Company | 770 00 |
| Crose & Leary | 2,338 26 |
| Valley Sand and Gravel Corporation | 514 58 |
| Austin Clay Products Company | 1,661 05 |
| Jos. F. Ryerson | 711 80 |
| August Feine & Sons Co | 352 00 |
| Louis W. Frazer | 603 00 |
| H. D. Taylor Company | 2,205 08 |
| Armstrong Cork and Insulation Company | 310 00 |
| Hercules Cement Company | 735 10 |
| Rogers Structural Steel Company | 1,669 78 |
| Wright & Kremers | 2,592 92 |
| Buffalo Floor Covering Company | 2,540 00 |
| Total | $20,157 40 |
| Gerstner & Statt, Inc | 2,773 62 |
| Total | $22,931 02 |

The liens above specified are allowed for the sums stated, and should be paid out of the fund for distribution. Any balance remaining after such payments should be paid to the trustee in bankruptcy of said LeVell Moon. Costs are allowed the plaintiff, to be first paid from said fund.

Let findings be submitted in accordance with the views expressed.