WILLIAM I. HATFIELD *et al.*, plaintiffs in error, *vs.* WILLIAM D. McWHORTER, defendant in error.

1. A bill was filed by M., alleging as follows : In the spring of 1864, D. deposited with him thirty boxes of tobacco for safe keeping, which was placed in the possession of F., his father-in-law : that in the spring of 1865 D. gave to H. an order on complainant for that tobacco, which was presented to F., in the absence of complainant, who delivered the tobacco to H., and took up D.'s order on complainant.    The next day after the tobacco had been delivered by F. to H., complainant met H., who informed him of the transaction, and requested complainant to take charge of the tobacco, (which still remained at the house of F.,) and sell the same for him, to which complainant *assented*.    In June, 1865, complainant sold the tobacco for forty cents per pound in specie. About two months after giving the order to complainant to deliver the tobacco to H., D. revoked that order, in writing, having previously made a verbal revocation, at what time it does not appear, but the complainant alleges that the verbal revocation was made *before*, and the written revocation *after*, the sale of the tobacco by him as the agent of H.    The complainant also alleges that he had formed a copartnership with H., and also had formed a copartnership with S., by

Hatfield *et al.*, *vs.* McWhorter.

which he was to purchase tobacco, and forward the same to them for sale on joint account. It is also charged in the bill, that H. and S. formed a copartnership, by which they were to ship North and sell the tobacco which should be forwarded to them, or either of them by complainant; that H. & S. did ship fourteen boxes of tobacco delivered to them by complainant, and sold the same for $1,400 00, United States currency, and have not accounted to him for any part thereof, nor has either of them. H. has instituted suit against the complainant for the thirty boxes of tobacco sold by him as the agent of H., and the prayer of the complainant is, that D. and H. may interplead with each other as to the title of the thirty boxes of tobacco, and if it shall be decided to belong to D., that he be decreed to pay the value thereof to him, but that, if it shall be decided to belong to H., then that H. shall account with him for his share of the fourteen boxes of tobacco sold by H. & S., and that the same be credited on the claim which H. is prosecuting against him, or allowed as a set-off against that demand. There was a general demurrer to this bill for want of equity, which was overruled : *Held*, that the complainant does not make such a case by his as bill entitles him to maintain it in a Court of Equity as a bill of interpleader : First, because he is not an innocent stakeholder between the parties as to the tobacco, for if D. gave an order to him to deliver it to H., and he did so deliver it, and afterwards sold the tobacco as the agent of H., then the title to the tobacco was in H., and the complainant can protect himself against the claim of D., by showing his order to deliver the tobacco to H. as the bailee of D. Second, if the complainant, as the bailee of D., *wrongfully* delivered the tobacco to H., then the Court will not aid him to require the parties to interplead in regard to a state of things which he has brought about by his own misconduct.

2. *Held further*, that although the complainant's bill cannot be maintained as a bill of interpleader, yet, as there are other grounds for equitable relief stated, in regard to the partnership claims, in the adjustment of which a Court of Equity can afford more adequate relief than a Court of Law, the general demurrer to the whole bill for want of equity was properly overruled by the Court below.

Partnership. Interpleading. Before Judge KIRBY. Walker Superior Court. September Term, 1869.

McWhorter's bill made the following case : In 1863, he and Hatfield formed a partnership, by which each was to furnish an equal sum of Confederate currency, with it McWhorter was to buy tobacco in the lines of the Confederate States army, and deliver it to Hatfield in the lines of the United States army, and he was to sell it for United

States currency, and the loss or profits were to be shared by them equally. About the same time he entered into a partnership for the same purpose with William B. Simmons on the same terms, and soon after this, Hatfield and Simmons formed a partnership by which they were to co-operate in forwarding the tobacco northward, and share the profits equally between themselves. He invested $10,000 00 in Confederate currency, of which Hatfield furnished half, and $6,000 00, of which Simmons furnished half, in tobacco, on account of his said firms respectively. He got through the lines fourteen boxes of tobacco, and delivered them to Hatfield & Simmons jointly; these weighed about fifteen hundred pounds, and cost $7,000 00 in Confederate currency. Of the remainder of the tobacco bought by him for said two firms, ten boxes, costing $5,000 00 in Confederate currency, were deposited at the appointed place of delivery, but were taken by Federal soldiers, or some other unauthorized persons, before Hatfield & Simmons got possession of them; eight other boxes, which cost $4,000 00 in Confederate currency, could not be gotten through the lines, and fearing its loss by reason of the approach of the Federal army, he sold them for $7,000 00 in Confederate currency, in January, 1865, and this sum became worthless by the fall of the Confederacy, before he could reinvest it.

Hatfield & Simmons sent said fourteen boxes to Chattanooga, Tennessee, and sold it for $1,400 00 in United States currency, but never paid him any part thereof. In the spring of 1864, Seaborn Disheroon left with him for safe keeping about thirty boxes of tobacco, and he stored it with his father-in-law, Freeman. About a year afterwards, Disheroon gave Hatfield an order on McWhorter for this last lot of tobacco; Hatfield presented the order to Freeman, and he without any authority or agency to do so, took the order and agreed to hold this tobacco for Hatfield. Next day Hatfield met McWhorter, told him of said transaction, and requested him to take charge of this tobacco, and sell it for him, Hatfield, and McWhorter agreed to do so. In June, 1865, McWhorter sold this tobacco for forty cents per pound, mak-

ing $258 40, in specie; all of this price he collected except $80·00, which he may yet collect. Before this sale, Disheroon verbally revoked his said order, and after the sale, revoked it in writing.

In 1867, Hatfield sued McWhorter for the value of this last lot of tobacco, and his suit is still pending in said county, and Disheroon threatens also to sue him therefor. McWhorter is ready and willing to pay either the amount last aforesaid, with this reservation, that if he ought to pay Hatfield he wishes to count that sum against his part of the profits of his and Hatfield's partnership, and says that he does not know which to pay, and fears that if he pays one he may be compelled to pay the other.

For these reasons he prayed that Hatfield and Disheroon should interplead as to this last lot of tobacco, and cease to sue him on account thereof, and if it be decreed that he ought to pay Hatfield, that the amount should be credited on what Hatfield owes him, by reason of the premises aforesaid, and for such other relief as the Court may think equitable. The injunction was granted. The defendants demurred to the bill for want of equity. The demurrer was overruled. That is assigned as error.

W. AKIN, for plaintiff in error.

C. D. McCUTCHEN, D. C. SUTTON, for defendants in error.

WARNER, J.

1. The complainant does not make such a case by his bill as entitles him, in our judgment, to maintain it as a bill of interpleader. First, because he is not an innocent stakeholder, between the parties, of the tobacco. If Disheroon gave an order to him to deliver it to Hatfield, and he did so deliver it, and afterwards sold the tobacco as the agent of Hatfield, then the title to it was in Hatfield, under the order of Disheroon to deliver it to him, and he sold the tobacco as the agent of Hatfield, and can protect himself from Disheroon's claim under his order to deliver it to Hatfield.

Second, if the complainant, as the bailee of Disheroon, did not have any authority from him to deliver the tobacco to Hatfield, and he *wrongfully* delivered it to him, and then took possession of the tobacco as the property of Hatfield, then the Court will not assist him to require the parties to interplead in regard to a state of facts which he has brought about by his own misconduct : *Tyus & Beall vs. Rust*, 37th *Georgia Reports*, 574.

2. Although the complainant cannot maintain his bill as a bill of interpleader, yet, as there are other grounds for equitable relief in regard to the partnership claims, in the adjustment of which a court of equity can afford more adequate relief than a court of law, and that Court having first taken jurisdiction of the subject matter in controversy between the parties, it will be allowed to retain it for the purpose of doing full and complete justice between them, and a general demurrer to the whole bill was properly overruled : Code, sections 3040, 3041.

Let the judgment of the Court below be affirmed.