[No. 8363.]

## PETERS ET AL. V. BOWERS.

1. BANKRUPTCY—*Jurisdiction of the Court in Bankruptcy.* The Federal District Court sitting as a court in bankruptcy is without jurisdiction to settle the title to properties claimed by the trustee in bankruptcy, and adversely claimed by a stranger to the proceeding in bankruptcy. (543, 544.)

2. —— *Jurisdiction of State Courts.* The state court has jurisdiction of an action by one who asserts title to property wrongfully claimed by a trustee in bankruptcy, as pertaining to the bankrupt's estate, but of which the court in bankruptcy has never assumed possession or control. (544, 545.)

3. —— *Wrongful Possession of Lands,* by the bankrupt, is no part of his estate. (545.)

*Error to Crowley District Court.* Hon J. E. RIZER, Judge.

Mr. I. H. STANLEY Mr. H. A. HICKS, Mr. W. B. VATES, and Mr. CHARLES ROACH, for plaintiff in error.

Mr. PERRY H. BEHYMER, Mr. M. G. SAUNDERS and Mr. E. T. CHAMBERS, for defendant in error.

Mr. Justice GARRIGUES delivered the opinion of the court.

The action below was in ejectment under the code to recover possession of real property and the subject matter was seventy acres of agricultural college land in Crowley County, and a beet crop growing thereon during the season of 1913.

For a number of years prior to November 2, 1910, one Hans Peters leased the land from the state, and lived upon it with his wife Margaretha and family. On the above date he purchased the tract from the state for $2463.65, which sum, to be entitled to a patent, he was to pay in fourteen annual installments, the first to be made November 2, 1911, and the last November 2, 1924, with interest on the unpaid balance at 7 per cent per annum; and there was issued to him the usual certificate of purchase, being No. 2141, stating that he would be entitled to a patent upon making the payments. In October, 1912, before the second payment was made in November, Peters assigned and delivered the certificate to E. N. Bowers, defendant in error, who surrendered it to the State Land Board for cancellation, in order to obtain a new certificate of purchase in her own name, and May 7, 1913, the board cancelled certificate No. 2141, and issued to her in lieu thereof, certificate No. 2716. At this time the first two payments on certificate No. 2141 had been made, and the Bowers certificate recites they were paid November 18, 1911, and November 19, 1912, and further recites that whereas Bowers had paid the sum of $492.72, leaving a balance due the state of $1970.92, evidenced by the remaining twelve annual installments, which are set out in certificate No. 2716, that she would be entitled to a patent upon making the remaining twelve payments. This certificate of purchase, owned by Bowers, is the only muniment of title to the land, and under it she claims to

own the title and right of possession. After acquiring the Peters certificate, Bowers arranged with Peters to surrender the possession of the premises to one Arnold who intended to farm the land the next year as Bowers' tenant, and Peters was going to Kansas as soon as he could pack his effects and move away. January 27, 1913, Arnold, pursuant to this arrangement moved with his family onto the land, took possession of the farm, and commenced the Spring work, intending to farm it during the season of 1913 for Bowers. Peters still occupied the dwelling, but was preparing to move. Arnold built half a mile of fence, hauled out 300 loads of manure, pruned the orchard, did Spring plowing, cleaned the ditches, and contracted with the sugar company to raise a crop of beets. Bowers' title, right of possession and possession were un-questioned at this time, and it was amicably arranged that Arnold and his family would occupy the granary until Peters, who was residing in the dwelling, could vacate the premises. According to this arrangement Peters packed, preparatory to leaving, and ordered a car in which to ship his effects to Kansas. This was about the middle of February. Thereafter he told Arnold he was not going away, and remained on the premises still occupying the residence, while Arnold and his family lived in the shack. February 19, 1913, the affidavit of his brother Henry Peters was filed for record, purporting to be based upon the homestead act, laws of 1911, page 452, stating that Hans Peters owned the land and at the same time one I. H. Stanley, plaintiff in error, as trustee, assisted Mrs. Peters, as her attorney, in making a homestead marginal entry on the record of this affidavit. The following day Hans Peters filed a voluntary petition in bankruptcy, February 24th, was adjudged a bankrupt and Stanley was appointed his trustee in bankruptcy, qualifying March 24, 1913. April 7, 1913, Peters ousted Arnold from the premises.

Stanley claims constructive possession of the premises

from the time Peters filed his petition in bankruptcy, and also claims that he took actual possession April 30, 1913, by walking over a portion of the land, looking it over, and causing it to be appraised as an asset of the bankrupt s estate. The appraisers valued Peter's interest in the land at $630.00, and in the improvements at $430.00. Stanley claims that at this time he orally leased the premises to Mrs. Peters for the season of 1913, with the understanding that if the bankruptcy court sustained the homestead entry, which he had recognized, that she was to own the land, and crops, and the trustee would have no claim or interest therein; but if the bankruptcy court did not sustain her homestead claim, that she would then be considered his tenant, and pay him as trustee, a certain share of the crops as rent. After they ousted Arnold, the Peters farmed the land, and raised a beet crop that season. During the summer of 1913, Stanley as trustee brought an action against Bowers in the Federal District Court, stating among other things, that the land had been set apart by him as the homestead of the bankrupt; that because of the marginal entry made by the bankrupt's wife under the homestead provisions of the laws of Colorado, there had been set apart from the real property a homestead claim of the value of $2,000. That case, on motion of Bowers, was dismissed out of court October 9, 1913, without prejudice, however, to the right of Stanley to again institute his suit under the same cause of action, as he shall be advised, in any court of competent jurisdiction. Stanley also set up the Peters' claim to a homestead exemption before the referee in bankruptcy. August 22, 1914, the finding of the referee was against the Peters' homestead exemption claim, from which finding no petition for review was filed. September 14, 1914, Stanley began a summary proceeding by filing before the referee in bankruptcy a petition for a motion to show cause why the land should not be sold as an asset of the bankrupt's estate, a copy of which

was served upon Bowers. This was tried before the referee November 17, 1914, who held that he was without jurisdiction to try Bowers' claim in a summary proceeding, Bowers being in possession of the muniment of title from the state, and claiming the title and right of possession, which claim he held she was entitled to have adjudicated in the ordinary way, in a plenary suit, and dismissed the petition. Thereupon the trustee filed a petition for a review of the decision by the Federal District Court sitting in bankruptcy, which was heard December 3, 1914, and an order entered therein holding the matter in abeyance pending the result of the writ of error in the case here.

September 29, 1913, Bowers, as plaintiff, filed a complaint in the District Court of Crowley county alleging in substance that she owned and was entitled to the immediate possession of the land; that Hans and Margaretha Peters wrongfully ousted, and then withheld the possession from her; that a certain beet crop growing upon the land, and belonging to plaintiff as a part thereof, was ready to harvest, which the Peters threatened to gather and dispose of; that Stanley as trustee in bankruptcy of Hans Peters, claimed some right, title or interest in and to the premises and crop, adverse to the right and title of plaintiff; that Mrs. Peters had given a chattel mortgage upon the beets to the Kropf Brothers Mercantile Company, for which it paid no consideration. The prayer is for the possession of the land and crops, damages for the detention, a temporary restraining order, injunction and for the appointment of a receiver. The court entered a temporary restraining order. In the petition for the appointment of the receiver it is alleged that the lands and crops growing thereon were in the possession of the defendants, and held adversely by them to petitioner without right or title.

October 3, 1913, defendants all answered specifically denying the material allegations of the complaint. The

Peters for a further answer stated that their claim, title and right of possession was based upon the homestead entry made by Mrs. Peters February 29, 1913, and that they had been in the continuous possession and occupancy of the land long before and ever since that date. The Kropf Brothers Mercantile Company stated as their claim and right, that it held a valid chattel mortgage on the beet crop, executed by Mrs. Peters. Stanley in answer to the petition for the appointment of a receiver admitted that the land and crops were held adversely to plaintiff, and alleged that she had no estate, right, title, interest, claim or demand therein. Stanley further answering stated that the character of his claim, right of possession and occupancy of the premises was based upon the bankruptcy of Hans Peters, his own appointment and qualification as trustee in bankruptcy of his estate, by virtue of which he became vested with all of the property of the bankrupt, (that he then took and at all times since has retained the possession of all property then in the possession of or under the control of the bankrupt) and all of the right of action which creditors had to set aside any fraudulent transfers made by Peters; that October 23, 1912, Hans Peters was the owner in possession of the land, and ever since has been in possession thereof; that on that day, being insolvent and within four months of being adjudicated a bankrupt, he made and delivered to Bowers a quit-claim deed for the land, with the intent to hinder, delay and defraud his creditors, and that Bowers so received the transfer, and knew of and participated in the alleged fraud; that by reason of the marginal entry made by Mrs. Peters, they have a homestead exemption claim in the land.

October 10, 1913, after issue was joined, the court appointed a receiver who took possession of, harvested and marketed the beets. March 9, 1914, Stanley moved for judgment of dismissal upon the ground that the court was without jurisdiction, because the pleadings disclosed that the

property was in his possession as trustee in bankruptcy, which motion was denied.

March 31, 1914, the cause was tried to the court without a jury, which found for plaintiff, and entered a decree that she was the owner and entitled to the possession of the premises, which it found were wrongfully possessed by the Peters, and by Stanley as trustee, and required them to surrender the possession to plaintiff. It also found there was in the hands of the receiver, as proceeds from the sale of the beets, the net sum of $516.84, which it ordered the receiver to pay over to the clerk, less his own compensation, and which the clerk was ordered to deliver to plaintiff. Before the introduction of evidence, and at the close of the trial, Stanley again moved the court to dismiss the action, upon the ground that the court was without jurisdiction to try the issue presented, which was denied. So it will be seen the Mercantile Company based its right upon the chattel mortgage; the Peters, their right upon the homestead entry, and Stanley based his right upon the claim that he was in the actual possession, as trustee in bankruptcy of Hans Peters, and held the property as an asset of the estate.

Stanley, as trustee, is the only person who saved exceptions at the trial or assigns errors here. It is conceded that the Peters had no standing upon the alleged homestead exemption claim. The Kropf Brothers Mercantile Company offered no evidence, and took no part in the trial. All the defendants below disappear from the case here, except Stanley, who prosecutes the writ of error, and his objection to the jurisdiction of the state court is the only question that will be considered.

GARRIGUES, J., after stating the facts as above, delivered the opinion of the court.

1. Two assignments of error present the entire question: First, that the court erred in assuming jurisdiction

of the subject matter for the reason that it appears from the pleadings that Stanley, as trustee in bankruptcy of Hans Peters' estate, was in possession of all the property involved at the time Bowers' adverse action was commenced in the state court. Second, that the court erred in assuming jurisdiction of the subject-matter, for the reason that Hans Peters was on the day of his adjudication as a bankrupt, and for twelve years prior thereto, had been in possession of the property and was in actual possession at the time of the commencement of this action in the state court, and that the property was in the custody of the Federal District Court sitting in bankruptcy; therefore the state court was without jurisdiction to try Bowers' claim of title and right of possession.

Bowers had the only muniment of title from the state, which drew with it the legal right of possession, and her claim was made in good faith, and not frivolous. Her controversy with the trustee was at law or in equity, as distinguished from one arising in proceedings in bankruptcy. She was entitled to have this controversy involving her claim of title and right of possession, tried by an independent suit at law or in equity where she would have the protection afforded by the pleadings and procedure in a plenary suit, as distinguished from a summary proceeding in bankruptcy. It is well settled that the bankruptcy court was without summary jurisdiction to adjudicate her title. It had jurisdiction, however, to make a summary investigation regarding the character of her claim. It did so and found that she possessed the muniment of title from the state, which constituted color of title and carried upon its face the legal right of possession; that she claimed absolute title and right of possession; that she was entitled to have her claim tried in a plenary suit, and declined to entertain summary jurisdiction and dismissed the petition. Bowers brought her suit in the state court and the only question in the case

here is whether she was obliged to try her claim in the Federal District Court, or whether under the circumstances the state court had jurisdiction to try the case.

In the absence of a federal statute providing otherwise, the title to real property claimed in good faith by a third party usually is determined by the local laws as evidenced by the decisions of the state court, and not summarily by the bankruptcy court. Ordinarily, without a federal statute to the contrary, Bowers had a right to have her claim tried by a suit in the state court. So we examine the bankruptcy act as amended in 1903 to see whether it deprives her of this right. Unless it provides otherwise, she had a right, so far as the federal laws are concerned, to have her claim of title and right of possession tried in the state court, and if such right is denied her by the courts it must be upon grounds other than the provisions of the bankruptcy act.

The amended act of 1903 gives the federal district court, sitting in bankruptcy, jurisdiction over the bankrupt's estate, except as otherwise provided. The exception, otherwise provided, relates to such controversies at law and in equity as are specified in sec. 23. Referring to section 23, as originally enacted in 1898, we find the first clause gives the federal circuit court jurisdiction of all controversies at law and in equity between the trustee, as such, and adverse claimants, in the same manner and to the same extent as though the controversies were between the bankrupt and the claimant, and no bankruptcy proceedings had been instituted. The second clause provides: Suits *by the trustee* shall only be brought or prosecuted in the courts where the bankrupt might have brought or prosecuted them, if there had been no proceedings in bankruptcy, unless by consent of the proposed defendant. So under the latter clause, prior to the amendment of 1903, Stanley as trustee, without the consent of Bowers could only have brought or prosecuted a suit to try her claim in the state court in Crowley county. But by

the amendment of 1903, an exception is added to this clause, permitting the trustee to bring plenary suits in such cases in the bankruptcy courts as well as in the state court. The amendment provides: "Except suits for the recovery of property under sec. 60b, sec. 67e and Sec. 70e." Referring to these exceptions which permit the trustee to bring suits, as distinguished from summary proceedings, in the bankruptcy court, we find 60b provides that transfers affecting a preference, shall, in certain cases, be voidable by the trustee, who may recover the property or its value, and for the purpose of such recovery the bankruptcy court, and the state court are given concurrent jurisdiction. Section 67e relates to property conveyed for the purpose of defrauding creditors, and provides in certain cases that *the trustee* may recover such property, and for the purpose of such recovery *by the trustee* the bankruptcy court and the state court are given concurrent jurisdiction. Section 70e provides that the trustee may avoid any transfers by the bankrupt which any creditor might have avoided, and may in certain cases recover the property or its value, and for the purpose of such recovery *by the trustee* the bankruptcy court and the state court are given concurrent jurisdiction.

So it will be seen these three sections constituting the exceptions, relate to suits *brought by the trustee* to recover property or its value, in which the bankruptcy court and the state court are given concurrent jurisdiction. Before the amendment of 1903, the trustee could only bring such suits in the state court, but now he may bring them in either the bankruptcy court or the state court. No such right, however, is given by the statute to the proposed defendant or claimant of the property. It may be, a third party, a stranger to the bankruptcy proceedings, would have the right under this amended act to bring a plenary suit in the bankruptcy court to try a claim of title, but we do not consider it necessary to decide this point, the only controversy here

being whether Bowers had a right under the circumstances of this case, to have her claim tried in the suit she brought in the state court.

Bowers lost no right solely by the voluntary bankruptcy of Peters, and the bankruptcy act takes from her no right she naturally had to have her claim tried in the state court. If she is to be deprived of such right, it must be for lawful reasons other than the bankruptcy of Peters, and those found in the bankruptcy statute. *Bardes v. Hawarden Bank,* 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175; *Frank v. Vollkommer,* 205 U. S. 521, 27 Sup. Ct. 596, 51 L. Ed. 911; *Hiscock v. Varick Bank,* 206 U. S. 41, 27 Sup. Ct. 681, 51 L. Ed. 945; *Babbitt v. Dutcher,* 216 U. S. 102, 30 Sup Ct. 372, 54 L. Ed. 402, 17 Ann. Cas. 969; *Skilton v. Codington,* 185 N. Y. 80, 77 N. E. 790, 113 Am. St. Rep. 885.

We understand counsel admit that the bankruptcy court had no summary jurisdiction to adjudicate Bowers' claim; that the state court ordinarily possessed such jurisdiction; but contend in this case, because the trustee claimed that the property was in his actual possession as trustee, as an asset of Peters' estate, when Bowers brought her suit, that the state court, which otherwise could lawfully have tried the case, acquired no such jurisdiction.

There is no doubt, as we announced in *Parks v. Wilcox,* 6 Colo. 489, that where property has been attached or levied upon by the United States Marshall under a writ or process from the federal court, it cannot be taken from him by the sheriff of the county on a writ of replevin or other process from the state court. That doctrine is to avoid a collision between the two courts and we are in hearty accord with the principle so freely announced and enforced by the state and federal courts; but we do not think it controlling under the facts and circumstances in this case.

The bankruptcy court never by summary process, or any kind of process took actual possession of this property,

and never by writ or otherwise authorized Stanley to do so, and never claimed possession of it as an asset of Peters' estate. It is evident that the bankruptcy court desired that the matter should be threshed out in the state court. We do not think the bankruptcy court ever, within the meaning of the bankruptcy act, acquired or intended to acquire the possession of the property to the exclusion of the right of Bowers to have her claim tried in this suit in the state court.

The bankruptcy court held that she was entitled to a trial by a plenary suit and that it had no summary jurisdiction to try her claim. The suit brought by Stanley in the federal court was dismissed, and he has not brought another. Bowers was in possession of the property when Peters was adjudged a bankrupt, and farmed it until April 7th, when she was ousted by Peters. Stanley claims he took possession as trustee April 30, 1913, and conditionally leased the land to Mrs. Peters. Whatever he attempted to do or did, he only acquired such right as Peters had. Peters had no right, he he had but the naked possession, which is not a property right, and was clearly a trespasser without color of title or right of possession. This never, from its very nature, could become an asset of the bankrupt's estate. Peters, when he gave possession, would be obliged to surrender it to the owner of the property, not to Stanley. The Peters only claimed a homestead exemption in the property which the federal and state courts declared was without foundation, and from which no review has ever been taken. Stanley answered in the ejectment suit, setting up and putting in issue the entire contention that Hans Peters conveyed the property to Bowers by a quit-claim deed with intent to defraud creditors, in which transaction Bowers participated. Upon the trial, however, he abandoned this issue which he had made and might have tried, and offered no proof in support of his contention. It is fair to presume, therefore, that he had no such proof. The issue of fraudulent convey-

ance was clearly joined in the state court in the suit brought by Bowers, but instead of introducing any evidence in support of his contention, Stanley stood upon the want of jurisdiction of the state court to try the action, and brings the case here upon that assignment of error.

The bankruptcy court refused to entertain summary jurisdiction upon his petition. The federal court dismissed Stanley's suit. He has commenced no other, and unless this suit can be maintained in the state court, Peters, without color of title or right of possession, will remain a trespasser, in the naked possession and receive the income from the land, while Bowers, who owns and holds the certificate of purchase from the state, and who is entitled to the possession, to save her right and title must make the annual payments to the state, and pay all the taxes. Moreover, from the transaction taken as a whole, it seems Stanley from the beginning has been more exercised about keeping the Peters in possession under the homestead exemption claim, and keeping Bowers out of possession, or hindering her in obtaining it, than he has in trying to adjudicate and settle Bowers' claim of title and right of possession. No conflict or collision has arisen, nor, as we view it, is likely to arise between the state and federal courts over the right of possession of this property. The whole matter seems to be in abeyance in the federal court, awaiting the decision here. Under these circumstances, we think the jurisdiction of the state court to try the suit should be sustained; that the judgment is right and Bowers should not be driven to begin another suit in the federal court; it therefore is affirmed.

*Affirmed.*

Chief Justice GABBERT and Mr. Justice SCOTT concur.