WILLIAM J. VANDERLIP, Plaintiff, v. WILLIAM A. WALKER and Others, Defendants.

Supreme Court, Niagara County, September 6, 1932.

*Francis L. Giles* [*William L. Hunt* of counsel], for the plaintiff.

*Marvin I. King*, deputy corporation counsel.

*Earl W. Brydges*, for Ayers-Witmer Lumber Company and others.

*George E. Carrie*, for the Board of Education.

*John O. Chapin*, for Concrete Stone and Coal Company.

*Edwin J. Culligan,* for Western New York Par Lock Appliers, and others.

*Edward H. Farnham,* for Henry B. Staples, as trustee, etc.

*Lewis & Carroll [Thomas G. Fitzgerald* of counsel], for Dwelle-Kaiser Company.

*Leonard R. Lipowicz,* for Joseph A. Sanders, Inc., and others.

*Love & Keating,* for Atlantic Terra Cotta Company.

*Maloney & Maloney [Stanley H. Montfort* of counsel], for Buffalo Structural Steel Company.

*Montfort & Montfort,* for Warren D. Shumway.

*Moore, Killian & Knowles,* for Wicker Lumber Company.

*Charles B. Moulthrop,* for Milton G. Haffner.

*Rann, Vaughan, Brown & Sturtevant [William N. Turner* of counsel], for Hachmeister-Lind Company.

*Stone & McConnell,* for Reuben O. Adams.

*Locke, Babcock, Hollister & Brown [Hugh McM. Russ* of counsel], for McClintic-Marshall Corporation.

CHARLES B. WHEELER, Official Referee. On August 19, 1930, the board of education of the city of Niagara Falls entered into a written contract with the defendant William A. Walker for the erection of said school building. Walker entered upon the performance of his contract, and on or about October sixth had practically completed his work. Some few things then remained to be done of minor importance, but Walker did no further work after October twenty-second. The board of education called on Walker to complete, and he failing to do more the board proceeded to finish the job at a cost to it of $250. The building was accepted by the board in February, 1932.

It is conceded there is now due and owing by reason of Walker's contract with the board and subject to distribution among those entitled to the fund the sum of $27,198.28, with interest thereon at two and one-half per cent from February 4, 1932.

No question or dispute is raised in this action as to the amounts due and owing the various claimants by Walker. The sole questions presented relate to the priority of their respective claims, and as to the disposition of the fund in the hands of the school board.

On the 23d day of October, 1931, various subcontractors and materialmen were pressing Walker for the payment of moneys due and owing them for work and material furnished by them to him in the prosecution of his work.

Accordingly, on October 23, 1931, Walker made, executed and delivered to eighteen of such contractors and materialmen assignments of the moneys due or thereafter to become due under his contract with the board. It is not necessary here to state the names or amounts, but the eighteen such assignments aggregated the sum of $42,053.70. These assignments were duly filed with the board of education and with the city treasurer on the same day and at the same time, so all stood on a parity with each other.

On the 29th of October, 1931, the board of education made *pro rata* payments to parties holding these assignments, being a little more than sixty per cent of the face of their respective claims, and amounting in all to $24,508.30. No further payments have been made by the board, but on the completion and acceptance of the building there still remains unpaid on Walker's contract the said sum of $27,198.28, with two and one-half per cent interest thereon as previously stated. After the making and filing of the eighteen assignments dated October twenty-third, Mr. Walker gave other assignments to subcontractors and materialmen which were duly filed, and others filed mechanics' liens against the fund. The fund is insufficient to pay all in full.

On March 4, 1932, Mr. Walker filed his petition in bankruptcy, was declared bankrupt, and the defendant Henry B. Staples was duly appointed as his trustee in bankruptcy, and asserts a claim to the undistributed fund against other defendants in this action.

The first question to be disposed of is whether such trustee has any legal claim or right to such fund, and whether the payment to the assignees and lienors upon their claims would constitute an illegal preference to them over general creditors of Walker, the bankrupt.

The contention is made by the trustee in bankruptcy of the contractor, William A. Walker, that the assignments of funds due and to become due on his contract are void because made in contemplation of insolvency and constitute an illegal preference, and were given in violation of the Federal Bankruptcy Act, section 60. (U. S. Code, tit. 11, § 96.) Subdivision a of that section declares what constitutes an illegal preference, and subdivision b declares such a preference shall be voidable by the trustee in bankruptcy if the person receiving it " shall then have reasonable cause to believe that the enforcement of such judgment or transfer would effect a preference, * * *."

The referee is of the opinion that the evidence shows not only that Mr. Walker, the contractor, was insolvent at the time of making the assignments in question, but that the persons or corporations to whom the assignments of October twenty-third were given had

reasonable cause to know he was insolvent and unable to meet his obligations to them and other creditors. A few days before the execution and delivery of these assignments, Walker had a meeting with the assignees, at which these creditors demanded payment of their claims and informed him that unless their claims were paid they would file liens against the fund owing and to become due and in the hands of the board of education. To avoid the filing of such liens and to provide for the payment of the materialmen's respective claims, the assignments in question were given, and on the twenty-ninth day of October the board of education paid to these assignees the sum of $24,508.30, then due the contractor, Walker. These payments were prorated and paid to the said assignees in reduction and part payment of their claims.

The Lien Law gave these creditors the right to file and enforce liens on the funds in the city's hands to pay for the erection of the school building. Instead of filing liens these creditors of the contractor accepted assignments of the moneys due and to grow due under Walker's contract.

When the board of education recognized and accepted these assignments the transaction amounted to the creation and recognition of a lien on the funds in their hands. The assignments in legal effect were but the substitutes for formal mechanics' liens against the fund.

The question, therefore, remains whether Walker, the general contractor, violated the Federal Bankruptcy Act in doing what he did.

As the referee understands the law, valid liens filed by subcontractors and materialmen against a fund are not subject to the objection of giving an illegal preference to the lienors. Such liens are not affected by the bankruptcy of the contractor. (2 Collier Bankruptcy [13th ed.], 1542 *et seq.;* also pp. 1478 *et seq.* and cases there cited; *Dwelle-Kaiser Co.* v. *Moon,* 140 Misc. 475.)

We cite numerous cases supporting the statutory and equitable liens of parties against assignees and trustees on bankruptcy. (See *Kane Co.* v. *Kinney,* 174 N. Y. 69; *Schoenherr* v. *Van Meter,* 215 id. 548, 550; *Hildreth Granite Co.* v. *City of Watervliet,* 161 App. Div. 420; *Gates & Co.* v. *National Fair & Exposition Co.,* 172 id. 581; *Crane Co.* v. *Pneumatic Signal Co.,* 94 id. 53.)

They are given by statute the right to a lien and stand on a different basis from voluntary payments made by a debtor to a creditor.

It is true that in this instant case those claiming by the assignments of October 23, 1931, filed no formal lien, but in place thereof took assignments of the moneys due and to grow due the general contractor.

We are of the opinion, however, this does not change or alter their rights so far as the Bankruptcy Act is concerned. The law has regard to the substance of a transaction rather than to its form. By the reading of section 25, subdivision 1, of the Lien Law (as amd. by Laws of 1930, chap. 859) it will be seen those claiming by assignment " shall be treated as a *lienor* having a lien to the extent of advances so made," and by subdivision 4 of the section (as amd. by Laws of 1930, chap. 859) it is declared that " any moneys available for distribution among lienors of any class shall be distributed *pro rata* in accordance with their respective valid liens."

Indeed it seems to have been the intention of the Legislature to treat money due or owing a general contractor as a trust fund in which those furnishing labor, materials or supplies used in the work are, so far as possible, protected for the payment of their valid claims. For instance by subdivision 5 of section 25 (as amd. by Laws of 1930, chap. 859) it is provided that in any assignment of money due or to grow due the assignment shall contain a covenant by the assignor that he will receive such moneys " as a *trust fund* " to be applied to the payment of claims of subcontractors and others, arising out of the improvements, and by subdivision 6 (as amd. by Laws of 1930, chap. 859) any contractor who applies such funds to any other purpose is guilty of larceny. We cite these provisions simply to show that in making the assignments of October twenty-third the assignor violated no provision of the Bankruptcy Law against illegal preferences. What the referee has said applies with equal force to assignments given by the contractor after the giving of those of October twenty-third, and to liens filed later against the funds in the hands of the board of education.

The argument in substance is that where a State statute gives a contractor, subcontractors, materialmen and others a lien on a fund for public improvement it was not the intention of the Bankruptcy Act to deprive such of the benefit of such liens on the ground of thereby creating an illegal preference, and the cases so hold.

This labor and material create the fund, and the Lien Law gives them an equitable lien thereon which the Bankruptcy Act does not take away.

As was said in substance in *Kane Co. v. Kinney* (174 N. Y. 69): A general assignee or trustee in bankruptcy simply takes the bankrupt's estate subject to the statutory and equitable rights of creditors to a lien, and not superior to such rights.

Having reached the conclusion that the trustee in bankruptcy cannot legally claim the liens and assignments against the fund

in the hands of the board of education are invalid as illegal preferences, the referee is called on to next consider the rights and priorities of the lienors and assignees in and to the fund in question.

We are of the opinion that all the assignees and lienors stand on an equality and are to share with each other *pro rata* in the fund subject to distribution.

We think the assignments given and dated October twenty-third are valid. We find no prohibition in the Lien Law prohibiting a contractor assigning moneys due or to grow due to subcontractors and materialmen to secure them for work and material put into the improvement, and such was the purpose of all the assignments in question, both as to those made on October twenty-third and those subsequently made. All such assignments were for work and material actually furnished and not to secure indebtedness to arise in the future. In this the claims in the present case differ from those asserted in *Lanna* v. *Gates, Inc.* (142 Misc. 171).

We think assignments made for that class of indebtedness valid. The courts have so held. (*Post & McCord* v. *City of New York,* 86 Misc. 300.)

Nevertheless, we are also of the opinion priority in date of such assignments or priority in date of filing with the designated authorities gives such assignees no priority of lien or right of payment over assignments or liens filed later.

An assignment simply created a lien on the fund. Assignees are designated as lienors by section 25 of the Lien Law, and subdivision 4 of that section provides: " There shall be no priority among labor lienors as a class, and any moneys available for distribution among lienors of any class shall be distributed *pro rata* in accordance with their respective valid liens."

The rights of the parties to this action are to be determined as the law stood prior to any amendment of the Lien Law passed by the Legislature of 1932.

Such rights are defined by section 25 of the Lien Law. The plaintiff and certain of the defendants claim priority of payment over others by virtue of the provisions of subdivision 1 of section 25 reading as follows: " An assignee of moneys, or any part thereof, due or to become due under a contract for a public improvement, whose assignment is duly filed prior to the filing of a notice of lien or assignment of every other party to the action, shall have priority over those parties to the extent of moneys advanced made upon such assignment before the filing of the notice of lien or assignment next subsequent to his assignment, but as to advances made subsequent to a notice of lien or assignment filed and unsatisfied such

assignee for the purpose of determining his proportionate share of moneys available for distribution as provided in subdivision four of this section shall be treated as a lienor having a lien to the extent of advances so made."

It will be noted that assignees of moneys due or to become due for a public improvement " shall have prority * * * *to the extent of moneys advanced made upon such assignment before the filing of the notice of lien or assignment next subsequent to his assignment, * * *."*

In all the assignments made by the general contractor, Walker, to the plaintiff and other defendants, no money whatever was advanced by them or any of them on such assignments. On the contrary, the assignments given were to provide for the payment of past indebtedness owing the assignee. So that none of the assignees can claim the benefit of this section of the law as giving them preference. · Nor does the latter portion of subdivision 1 of section 25 give them priority, but declares as to advances made after the filing of a lien or subsequent assignment the moneys available for distribution shall be distributed as provided in subdivision 4 of section 25, which declares: " There shall be no priority among labor lienors, as a class or among other lienors as a class, and any moneys available for distribution among lienors of any class shall be distributed *pro rata* in accordance with their respective valid liens."

The priority given by the first subdivision of section 25 was evidently intended by the Legislature to enable contractors to help finance their operations by borrowing money secured by assignments of money due or to become due under their contract, provided money so advanced went into the cost of construction. To insure this by subdivision 6 of the section it is declared: " The funds received by a contractor under any and all advances made pursuant to any assignment of moneys or any part thereof, due or to become due under a contract for a public improvement, are hereby declared to be trust funds in the hands of such contractor to be first applied to the payment of claims of subcontractors, architects, engineers, surveyors, laborers and materialmen arising out of the improvement and to the payment of premiums on surety bond or bonds filed and premiums on insurance accruing during the making of the improvement, and any contractor and any officer, director or agent of any contractor who applies or consents to the application of such funds for any other purpose and fails to pay claims hereinbefore mentioned, is guilty of larceny and is punishable as provided in section thirteen hundred and two of the penal law.

" Nothing in this subdivision shall be considered as imposing

upon the assignee any obligation to see the proper application of the moneys advanced under such assignment by the assignee."

It is manifest, therefore, to the referee there was no legislative intent to give other assignments given simply for work and materials furnished by subcontractors and materialmen a priority in the distribution of funds owing the general contractor.

The assignments and liens in this case were all for work and material furnished the general contractor prior to the making of any assignment and prior to the filing of any lien, and were for indebtedness incurred by him in the prosecution of his work before the first assignment was made.

At the time the first assignment was made the general contractor had practically completed his contract, and only some small things remained to be done, not exceeding in amount $250, and these things the board of education itself did, charging the cost of such completion against the general contractor. So, as matter of fact, all the assignees and other lienors stood on a perfect equality, each having supplied work or material which went into the building, and for which the general contractor had become indebted to them.

We think, therefore, the fund subject to distribution should be divided and paid *pro rata* to each as provided by subdivision 4 of section 25 of the Lien Law. This certainly is equity and what we think the statute sought to accomplish. However, the question still remains whether in making such a *pro rata* distribution those creditors holding assignments dated October twenty-third are to be paid a *pro rata* share on the balances remaining unpaid on their claims or only their *pro rata* share on their original claims. We must bear in mind that on the twenty-ninth day of October the board of education made certain payments *pro rata* to those holding the assignments dated October 23, 1931, and after such payments were made there still remained a balance due and owing such assignees. Whereas those creditors afterwards obtaining assignments and filing notices of liens have so far received nothing on their claims.

If those holding assignments dated October twenty-third are entitled to hold the payments already made and then get a *pro rata* percentage on the balance owing, the result will be that they will ultimately receive a larger percentage of their claims than the other lienors.

The referee is of the opinion and holds such was not the intent and purpose of the statute.

We think the moneys paid out by the board of education on October twenty-ninth, amounting to the sum of $24,508.30, should be added to the money still on hand undistributed and the sum of

these two amounts will be deemed the sum subject to distribution for the purpose of ascertaining the percentage creditors are entitled to receive. This percentage having been arrived at, then what each creditor is entitled to receive on the basis of the original amount of his claim can be ascertained. From that sum should be deducted the amount paid each assignee thereon by the board of education on October twenty-ninth, and the balance will be the present extent of such lienors' claim in the fund to be distributed. Others who have received no payments will get their *pro rata* share. Thus there will be given recognition of the purpose and object of the statute not to pay one creditor in preference to another.

As we have previously stated, we deem the fund subject to distribution a trust fund existing for the benefit of all lienors, whether a lienor by assignment or by virtue a lien notice. If correct in this view, then all should share equally and ratably in the fund.

One question remains for consideration.

Walker, the contractor, entered into an agreement with one Milton G. Heffner by which Heffner agreed to superintend the construction of the high school at LaSalle. Walker agreed to pay Heffner one dollar and fifty cents per hour for his services as super-intendent, and also a further bonus of twenty-five dollars per week until the force of men was reduced to ten or under per day. Heffner was paid the one dollar and fifty cents per hour for the time he put in, but the bonus of twenty-five dollars per week was not paid. This amounted to $1,300, for which Heffner filed a lien and claims a preference in payment over other claims as a laborer for daily or weekly wage as provided by section 13 of the Lien Law (as amd. by Laws of 1929, chap. 515).

The claim for a preference is objected to by other lienors.

The so-called " *bonus* " of twenty-five dollars per week was and is a part and portion of the wage agreed to be paid by the contractor and was to be computed on a " weekly " basis.

While the use of the word " bonus " is unfortunate, nevertheless the referee feels constrained to hold this indebtedness falls within the provisions of section 13 of the Lien Law and Heffner is entitled to a preference in payment over other creditors.

The defendants William A. Walker and the Southern Surety Company of New York at the time of the making of the contract between the said William A. Walker and the board of education of Niagara Falls did make and execute and deliver to said board their bond in the penal sum of $248,757, conditioned that the obligors would pay all persons who had contracts directly with the defendant William A. Walker for labor and materials for the

erection of said school building, which bond contained the provision: " and it is expressly understood and agreed that any persons, copartners, associations or corporations furnishing materials or rendering services in or about the execution of such contract may maintain an action to recover for the same against the obligors of this bond as though such person, copartnership, association or corporation were named therein, such action to be brought within one year after cause of action accrues."

The complaint and answers pray that the rights and obligations of the Southern Surety Company be determined and that the surety company pay any deficiency that may remain after the use of the fund in payment of the claims of the plaintiff and others. The surety company has not answered or appeared in this action. We are advised it has been declared bankrupt.

The order or decree appointing a receiver of the surety company was not introduced in evidence on the hearing before this referee, but it doubtless contained the usual provision against the prosecution of actions against the surety company. In any event, judgments against the surety company would be of little avail. Nevertheless, we are of the opinion the liability of said surety company to the various claimants under its bond should and may be determined in this action to the end that such claimants may file with the receiver of said company claims for the amounts remaining owing to them after a distribution of the fund pursuant to the decree to be entered in this action, and it is so ordered.

The various attorneys appearing in this action for claimants are entitled to a bill of costs to be paid first out of the fund for distribution. This, however, is not to be interpreted as awarding costs to each party plaintiff or defendant, but simply one bill of costs to each attorney although he may represent several parties. No bill of costs is awarded the attorney for the trustee in bankruptcy, as he has wholly failed in his claim. Findings may be prepared and submitted in accordance with the views above expressed.