SMITH, trustee, *v.* FOLSOM *et al.*

No. 13304.   JUNE 12, 1940.

*Hal M. Smith* and *W. B. Smith,* for plaintiff in error.

*Will Ed Smith, A. R. Ross,* and *W. S. Mann,* contra.

DUCKWORTH, Justice. ■ "Whenever a person shall be possessed of property or funds, or owe a debt or duty, to which more than one person shall lay claim of such a character as to render it doubtful or dangerous for the holder to act, he may apply to equity to compel the claimants to interplead." Code, § 37-1503. There is no merit in the contention that a petition for interpleader would not lie under the facts of the instant case. It appeared that upon the completion of his house the owner had expended all, except approximately $1700, of the contract price for materials and labor used in its construction. The contractor and the materialmen laid claim to this sum. The amount of the balance of the contract price was not in dispute, and neither of the claimants contended that the owner was liable for any amount above this sum. The only question was to whom he should pay it. The materialmen contended that under an oral agreement reached on October 17, 1938, the contractor agreed that the owner should prorate this sum among them; while the contractor denied that he agreed to such an arrangement, and contended that he was entitled to payment under

the terms of the original contract. It was not contended that under the alleged contract of October 17 the owner incurred any independent liability to the materialmen. His position was that of a person owing a debt to which the materialmen and the contractor were adverse claimants. There were no facts to show that he was a wrong-doer. Such cases as *Tyus* v. *Rust*, 37 *Ga.* 574 (95 Am. D. 365), *Hatfield* v. *McWhorter*, 40 *Ga.* 269, and *Wight* v. *Ferrell*, 188 *Ga.* 200 (3 S. E. 2d, 736), cited for the plaintiff in error, are therefore inapplicable.

"Before one occupying the situation of a stakeholder can call upon adverse claimants of a fund in his hands to interplead, he must satisfactorily show to the court that their claims have such a 'foundation in law as will create a reasonable doubt' as to his safety in undertaking to determine for himself to whom the fund belongs." *Franklin* v. *Southern Railway Co.*, 119 *Ga.* 855 (47 S. E. 344). The contractor went into bankruptcy immediately after the completion of the house, and he and the trustee claimed the fund as an asset of the bankrupt. In *Pike Lumber Co.* v. *Mitchell*, 132 *Ga.* 675 (64 S. E. 998, 26 L. R. A. (N. S.) 409), it was held: "In order to foreclose a materialman's lien for material furnished a contractor to be used in improving the property of another, it is necessary that the materialman have judgment against the contractor in a previous action, or the contractor must be sued concurrently in the foreclosure proceedings with the owner of the property improved. If the contractor be adjudged a bankrupt, so that no judgment in personam can be had against him in an action at law, his immunity from liability to a personal judgment will not give the materialman a right to foreclose his lien in equity against the property improved." See also *Philip Carey Co.* v. *Viaduct Place*, 1 *Ga. App.* 707 (58 S. E. 274). It would seem to follow that the owner might ordinarily pay the balance of the contract price to the trustee of the bankrupt contractor, and avoid any danger of liability to the materialmen. It should also be noted that the bankruptcy court is generally held to be the proper forum for the assertion of the liens of materialmen against the balance of the contract price claimed by a bankrupt contractor. See 6 Am. Jur. 717, § 328. However, in this case the materialmen were more than mere lien claimants. They claimed that under a valid oral contract the entire balance of the fund had been assigned to them. The con-

tractor denied these contentions. Both the existence and validity of the alleged contract were disputed matters, and the owner would have acted at his peril had he attempted to settle the disputed issues. *Graham* v. *Southern Railway Co., 173 Ga.* 573 (3) (161 S. E. 125, 80 A. L. R. 407). While he was present when the alleged agreement was made and probably knew the exact terms agreed upon, yet when the parties at interest disputed the terms of the agreement it was not his duty to say what the truth of the matter was and pay out the fund accordingly. It might be that a jury would find on the conflicting testimony of the interested parties that the facts were different from what the owner understood them to be. Certainly this was such a doubtful question that he should be entitled to have the adverse claimants interplead and thrash out these differences in the courts.

■ It is contended that the State court did not have jurisdiction to entertain this suit, since at the time it was filed the contractor had been adjudicated a bankrupt in the Federal bankruptcy court, where he scheduled the fund in controversy as one of his assets and scheduled the claims of the materialmen among his debts. The constitution of the United States vested authority in Congress to establish uniform laws on the subject of bankruptcies throughout the United States; and the power of Congress is paramount in matters relating to this subject. In pursuance of this authority it has enacted laws of uniform operation throughout the nation, and has designated certain courts as courts of bankruptcy. Among the courts which it has so designated is the United States district court. Although this court is one of limited jurisdiction, its jurisdiction is unlimited in respect of its power over proceedings in bankruptcy which Congress has specifically made subject to its jurisdiction. Congress, however, has not seen fit to confer upon it exclusive jurisdiction to adjudicate every question which may arise in connection with the estate of a bankrupt. Its jurisdiction of property of a bankrupt of which it has acquired possession is exclusive. Murphy *v.* John Hofman Co., 211 U. S. 562 (29 Sup. Ct. 154, 53 L. ed. 327) ; Hebert *v.* Crawford, 228 U. S. 204. It has jurisdiction to settle adverse claims to such property by summary proceedings. Board of Trade *v.* Johnson, 264 U. S. 1 (44 Sup. Ct. 232, 68 L. ed. 533) ; May *v.* Henderson, 268 U. S. 111 (45 Sup. Ct. 456, 69 L. ed. 870). But it does not have jurisdiction to de-

termine by summary proceedings the adverse claims of third parties to property of which it has not acquired possession, either actually or constructively. Taubel-Scott-Kitzmiller Co. *v.* Fox, 264 U. S. 426 (44 Sup. Ct. 396, 68 L. ed. 770). Such property remains subject to the jurisdiction of State courts, and a plenary suit by a trustee for its recovery must be brought in the State court where the bankrupt might have brought it if bankruptcy proceedings had not been instituted, unless by consent of the defendant, or unless the suit be one which the bankruptcy act specifically authorizes being brought in the United States district court. See 11 U. S. C. A. § 46. It has also been held that State courts have jurisdiction of suits against a trustee in bankruptcy to determine title to such property. Peters *v.* Bowers, 61 Colo. 534 (158 Pac. 11Q1); Skilton *v.* Codington, 185 N. Y. 80 (77 N. E. 790, 113 Am. St. R. 885); Moore *v.* Hoffman, 327 Mo. 852 (39 S. W. 2d, 339, 75 A. L. R. 135). These decisions hold that it was not the intention of the bankruptcy act to subject bona fide claims to property to summary disposition in the bankruptcy court, or to deprive such claimants of their right to a plenary suit for this purpose. See also Bardes *v.* Hawarden Bank, 178 U. S. 524 (20 Sup. Ct. 1000, 44 L. ed. 1175); Frank *v.* Vollkommer, 205 U. S. 521 (27 Sup. Ct. 596, 51 L. ed. 911).

It is urged that the court of bankruptcy obtained such constructive possession of the fund in controversy as to give it exclusive jurisdiction thereof. The plaintiff in error stresses the fact that the bankrupt was in possession of a duplicate copy of the original contract at the time he filed his petition in bankruptcy; but we think that this fact has no bearing on the "possession" of the fund. The contract was nothing more than an instrument which might be used as evidence of his right to the fund. However, In re Weston, 68 Fed. 2d, 913 (98 A. L. R. 319), it was held that the bankruptcy court obtained such constructive possession of a fund due to a bankrupt contractor as to prevent a State court from obtaining jurisdiction of a subsequent proceeding to enforce a mechanic's lien filed against such fund. In that case it was said that the fund was held for the benefit of the contractor at least until liens had been asserted against it, and that this amounted to constructive possession. One judge dissented from the opinion. In Perry *v.* Wood, 63 Fed. 2d, 257, it was held that since the Texas lien laws

had the effect of transferring the owner's obligation from the bankrupt contractor to the materialmen lienholders to the extent necessary to satisfy their liens, the State court had jurisdiction of proceedings to enforce such liens. The facts of the instant case are such as to bring it under the ruling of the latter case. Whether or not the statutes of our State have the effect of transferring the owner's obligation from the bankrupt contractor to the materialmen, the asserted agreement of October 17, if valid, would have that effect. If the assignment was valid, the owner was bound to apply the fund according to its terms among the materialmen, and could not properly have paid the fund to the contractor. See *Graham* v. *Southern Railway Co.,* supra. The trustee in bankruptcy acquired no better title to the fund than the bankrupt had at the time the petition was filed. Therefore it is clear that the owner was not holding the fund for the benefit of the bankrupt, and that the bankruptcy court can not be said to have obtained constructive possession thereof under the theory of the Weston case.

■ The petition for interpleader contained prayers that the trustee and the other defendants be enjoined from bringing independent suits against the petitioner; and this prayer was granted in the order of the court authorizing the interpleader. We do not think that this amounted to an unauthorized interference with the administration of the bankruptcy court. As stated above, the State court had jurisdiction of the fund involved, and the fund was never in the possession of the bankruptcy court. Having jurisdiction of the fund, the court necessarily had authority to pass all proper orders with respect thereto. It did not purport to interfere with the administration of the assets of the bankrupt which were in the possession of the bankruptcy court. The only purpose of the suit was to require the trustee to interplead and assert his claim, in order to determine if the bankrupt had title to the fund. See Moore *v.* Hoffman, supra.

■ It is also urged that the suit would not lie, because leave to interplead the trustee was not obtained from the court of bankruptcy which appointed him. In Rice *v.* Kelly, 226 Ky. 347 (10 S. W. 2d, 1112), it was said: "It is clear that consent of the Federal court is not necessary to authorize a suit by or against a trustee in bankruptcy, in either a State or Federal court." The following cases were cited as authority for this statement: Eyster

*v.* Gaff, 91 U. S. 521 (23 L. ed. 403) ; Duncan *v.* Fox, 300 Fed. 165 ; In re Kanter, 121 Fed. 984; In re Smith, 121 Fed. 1014. There is, however, some authority to the contrary. See Carney *v.* Averill, 110 Me. 172 (85 Atl. 494) ; Svenska Taendsticks Fabrik Aktiebolaget *v.* Bankers Trust Co., 268 N. Y. 73 (196 N. E. 748) ; Carpenter *v.* International-Great Northern R. Co., 5 Fed. Supp. 768. Whether or not leave to sue the trustee should in any event be obtained from the bankruptcy court, it is clear that such leave was not necessary in the instant case. "An interpleader suit involving a trustee in bankruptcy is not an interference with, and can not mature into any charge on, the assets; for it is merely an invitation to come in and get some more assets if the trustee is entitled thereto. . . And leave to interplead trustee need not be secured from the court of bankruptcy which appointed him." Massachusetts Mutual Life Insurance Co. *v.* Grossman, 4 Fed. Supp. 990.

■ The trustee contended that various creditors of the bankrupt should have been made parties to the suit. The creditors mentioned do not appear to have been adverse claimants to the fund in question, but appear to have been creditors of the estate, who might have had a priority over the materialmen if it were treated as a part of the estate of the bankrupt. Upon appointment, the trustee became vested with the duty of collecting all of the assets and bringing them into the bankruptcy court for distribution by that court in accordance with the priorities of the various claims. He represented all of the creditors for that purpose, and therefore it was unnecessary to make creditors of the bankrupt parties to this suit. For the reasons stated in this and the preceding divisions of the opinion, the court did not err in granting the prayers of the petitioner for an interpleader and in overruling the trustee's objections thereto. There was no motion to remove the case to the Federal court, and nothing said in this opinion should be construed as a ruling on the questions which might arise from such a motion.

■ We come now to the evidence upon which the court directed a verdict for the materialmen. It appeared that when the materialmen discovered that the purchases made from them by the contractor were so large that it would be impossible for them to be paid in full from the contract price, they immediately sought to determine what steps could be taken to keep their losses as small

as possible. It does not appear that either of the materialmen realized before that time that the others had such a large bill for supplies; and one testified that he did not know until then that the house was being built under a contract, but thought that the contractor was merely acting as superintendent in the construction of the house for the owner. Knowing that the contractor was unable to bear any of the loss resulting from his contract, they arranged a meeting with the contractor and the owner at the latter's office, to see what could be done. Some of the materials had not been attached to the house, and on the way to the meeting the contractor was told that these would be seized unless satisfactory adjustments were made. (However, nothing appears to have been said about the materials at the conference.) According to the testimony of the materialmen, the contractor joined in the conversation with reference to the recovery of the materials, and expressed his willingness to do whatever they decided was best. At the meeting it was agreed that the owner would be allowed to complete the house and pay cash for the materials and labor required for its completion; that the contractor would supervise the completion of the building, without charge; that the balance of the contract price, after deducting the amount previously paid for labor and the amount necessary for completion of the house, should be paid directly to the materialmen in proportion to their respective claims; and that the materialmen should not file liens or make other claims against the owner. The materialmen testified that the contractor agreed to this arrangement. However, his testimony on this question was as follows: "I did not agree to the payment of this money, as was testified to by materialmen here. I was present, and knew what they said and knew what they were agreeing to among themselves, but did not say anything. I made no objection, as there was nothing I could say." It is insisted that the evidence demanded a verdict on the theory that an equitable assignment of the fund in controversy was shown by this evidence. "An equitable assignment is such an assignment as gives the assignee a title which, though not cognizable at law, will be recognized and protected in equity. 'It is in the nature of a declaration of trust, and is based on principles of natural justice and essential fairness, without regard to form.' 5 C. J. 837. While a legal assignment must be in writing (*Turk* v. *Cook*, 63 *Ga.* 681), an equitable assignment can be made either by oral agree-

ment or in writing. *Beasley* v. *Anderson,* 167 *Ga.* 470 (1 *d*) (146 S. E. 22) ; *Meyer* v. *Hiatt,* 40 *Ga. App.* 583 (2) (150 S. E. 567)." *United Engineers & Constructors Inc.* v. *Fiat Metal Mfg. Co.,* 175 *Ga.* 509 (165 S. E. 609). The fund in question was such a fund as might be assigned. 6 C. J. S. 1062, § 18. In order to infer an equitable assignment, it must appear that an immediate change of ownership with respect to the fund was contemplated by the parties. *Jones* v. *Glover,* 93 *Ga.* 484 (21 S. E. 50). Such an intention was manifested by the facts in this case. The owner was to pay no more of the contract price to the contractor, but was himself to pay cash for all labor and materials thereafter supplied. The balance of the contract price, the fund in controversy, was to be paid directly to the materialmen upon completion of the building. It is clear that it was the intention that title to this fund should vest immediately in the materialmen absolutely, and not merely as security for their debts.

There must be a valuable consideration to support an equitable assignment. Had the assignment been in written form, the pre-existing debt would have constituted a sufficient consideration; but it is urged that this is not true of an equitable assignment. Whether or not the pre-existing debt was such a valuable consideration as would support the assignment (*Sutton* v. *Ford,* 144 *Ga.* 587 (5), 87 S. E. 799, L. R. A. 1918D, 561, Ann. Cas. 1918A, 106), we think the facts of the instant case make the materialmen purchasers for value. It is undisputed that they met with the intention of taking immediate steps toward collecting for materials which they had furnished. Some of the materials had not been attached to the building, and it was their intention to take steps to recover these materials. It is not clear how much of the materials had not been installed in the building; but if they had retaken any of them, they would have reduced the indebtedness of the contractor to that extent. It is apparent that the contractor in filing his petition in bankruptcy intended to claim the entire balance of the contract price as a homestead exemption. If the materialmen had retaken the materials, the contractor doubtless could not have replaced them on credit, and work on the house would have been discontinued, or it would have been completed by the owner paying cash for the materials. In any event, the fund now in controversy would have been smaller than it is, the claims of the materialmen

would have been smaller, and there would have been a smaller amount for the bankrupt to claim as his exemption. In reliance upon the agreement the materialmen forbore to file their liens and take other steps toward the collection of the money due to them until the contractor had filed a voluntary petition in bankruptcy claiming the fund as an asset of his estate. It has been held that the forbearance to file liens constitutes consideration. Westinghouse Electric & Mfg. Co. v. Brooklyn Rapid Transit Co., 6 Fed. 2d, 960. By reason of the delay the materialmen endangered their claims; and whether or not the bankruptcy proceeding would have deprived them of all chance of collecting anything, they were certainly placed in a more dangerous position by reason of their reliance upon the agreement. The contractor testified that he did not agree to the assignment. He admitted that he was present at the meeting and knew all of the terms of the agreement reached between the owner and materialmen, and that he said nothing. He did not deny that he had previously said that he would agree to whatever solution the owner and materialmen might work out. His only excuse is that he said nothing because there was nothing for him to say. His testimony can only amount to an admission that he agreed to the contract by his silence. He had represented himself as ready to agree to anything that suited the other parties at interest. The other parties reached a solution in his presence, and under his testimony he silently acquiesced therein. Then, too, his later conduct shows a ratification of the agreement, because he finished the building in accordance with the terms of that agreement, and not those of the original contract. Where one under a duty to speak fails to do so, he is thereafter estopped to deny what his silence imports. *Smith* v. *Jones,* 185 *Ga.* 236 (194 S. E. 556).

■ The plaintiff in error contends that if the assignment be otherwise valid, it is void as a preference under the Federal bankruptcy act. That act, in so far as here material, is as follows: "A preference is a transfer . . of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition in bankruptcy, . . the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some

other creditor of the same class." 11 U. S. C. A. § 96. It is well settled that a materialman's lien is not such a lien as is avoided by the bankruptcy of the debtor. See *Middle Georgia Lumber Co.* v. *Hunt,* 53 *Ga. App.* 578 (3) (186 S. E. 714), and cit. Neither is an assignment to the lienholders of the fund subject to such a lien a preference within the meaning of the bankruptcy act, where the assignment is made for the benefit of all such lienholders. Vanderlip *v.* Walker, 144 Misc. 629 (259 N. Y. Supp. 289). In this case the assignment was made for the benefit of all the materialmen involved. Thus it can not be said that the transfer enabled any creditor to obtain a greater percentage of the fund than "some other creditor of the same class."

■ In the motion for a new trial the verdict is attacked as void because it failed to cover all of the issues involved in the case. In their verdict the jury, after finding in favor of the materialmen in the sum of their respective claims for materials furnished, found "that the fund paid into court by the plaintiff be applied to the payment of said sums pro rata." It is contended that the jury should have settled the issues pertaining to the right of the petitioner to maintain the petition for interpleader, that the verdict should have been against some particular party, etc. We do not deem it necessary to state each of the numerous grounds of attack, all of which seem to have been based upon an erroneous conception of the nature of a suit in interpleader. Such a suit may be said to consist of two phases. It must first be determined whether the bill will lie. In this phase the court determines whether the complainant is entitled to the relief which he seeks, and enters a decree accordingly. This was done in the instant case when the court, after a hearing, entered a decree overruling the objections and demurrers of the trustee, allowing the petitioner to pay the fund in controversy into the registry of the court, and ordering the defendants to set up their respective claims to the fund. This decree was final in so far as the prayers of the petitioner were concerned. He then obtained all of the relief which he sought. *Perkins* v. *Trippe,* 40 *Ga.* 225. Thereafter the suit entered its second stage. The defendants were then required to interplead and litigate the matter in dispute between themselves. As stated by Justice Bleckley, in *Andrews* v. *Halliday,* 63 *Ga.* 263, 271, "the complainant in a bill of interpleader merely stirs up a war and

then leaves the real belligerents to fight it out, he retiring from the scene to repose in dignified ease, holding, the while, the prize which is to reward the victor." In this case the complainant no longer even held the prize, for that was ordered paid into the custody of the court. The only question before the court upon the trial being to whom the fund should be awarded, the verdict was properly limited to the determination of this issue. For this purpose it was not necessary to return a verdict against the other parties to the suit.

The grounds of the motion for a new trial which have not been dealt with specifically being without merit, it was not error to to overrule the motion.

*Judgment affirmed. All the Justices concur.*